JOSIAH THOMPSON and another *vs.* ST. PAUL CITY RAILWAY COMPANY.

December 2, 1890.

**Railway—Lien for Materials.**—Under the provisions of Gen. St. 1878, *c.* 90, § 1, (now repealed,) which gave a lien to a subcontractor who furnished materials for the construction, alteration, or repair of any line of railway in this state, it was not essential to an enforcement of the lien that said materials should have been furnished or delivered by the subcontractor within the limits of this state.

**Depositions—Defective Notice—Waiver of Objections.**—Notice of the taking of depositions without the state (Gen. St. 1878, *c.* 73, § 36) was served upon appellant. In this notice it was stated that at a certain time and place the depositions of T. and C. "and others" would be taken. Appellant appeared, and participated in taking the depositions of T. and C. and *two other persons*, without objection. Notice of the return of these depositions was served upon appellant when they were returned and filed in the district court. Appellant made no motion to suppress, but on the trial objected to the reception of the depositions of the two witnesses not specially named in the notice. *Held*, that the objection came too late.

Appeal by defendant fro. . an order of the district court for Ramsey county, refusing a new trial after a trial before *Brill*, J., and judgment ordered for plaintiffs, enforcing a lien of $1,424.30 upon one of defendant's lines of street railway.

*Henry J. Horn*, for appellant.

*John B. & W. H. Sanborn,* for respondents.

COLLINS, J. Action by subcontractors to establish a lien for materials furnished for and used in the construction of one of defendant's lines of street railway. The appeal is from an order refusing defendant a new trial. By finding, as did the court below upon the trial of this case, that the allegations of the complaint were true, save as to some small matters not important here, it found, among other facts, that plaintiffs furnished and delivered the materials within the state of Minnesota. The assignment of error principally argued by appellant's counsel is that not only was this finding unsupported by the testimony, but that the plaintiffs' witnesses, who alone testified upon the point, stated unequivocally that all of the materials were delivered by these plaintiffs to the chief contractor, a corporation, at its place of business in Pennsylvania, and that this corporation, with whom the defendant had alone contracted, thereafter shipped and delivered the same to defendant within this state. As appellant states, there is no room for controversy over this testimony. These plaintiffs entered into an agreement outside of this state to make and deliver the materials to the principal contractor, and completed their contract. But the articles were to be so made and delivered for a specified object and purpose. They were to be made for use upon defendant's line of road, and according to plans specially furnished therefor.

The statute, now repealed, under which the lien is asserted, (Gen. St. 1878, c. 90, § 1,) provides that "whoever furnishes any labor, skill, or material for constructing, altering, or repairing any line of railway, * * * by virtue of any contract with the owner, * * * or by virtue of any subcontract with any original contractor with such owner, * * * shall have a lien to secure the payment for such labor, skill, and material." Of course, under our statute, the case now before us must be considered precisely as if plaintiffs' agreement had been made with the defendant directly, and no original contractor had stood between the parties; precisely as if, under a like contract made in the same place, plaintiffs had furnished and delivered their materials to defendant without the state, and that subsequently, and as intended, they had been shipped into

and put in use by defendant within the state. In *Birmingham Iron Foundry* v. *Glen Cove Starch Mfg. Co.*, 78 N. Y. 30, the facts, as stated, were about the same as in this case, although it does not appear, and, possibly, is not important, that the subcontractor, plaintiff, did its work and delivered its material with reference to the contract in hand, or with any knowledge of the special purpose for which the material was designed. The chief contractor failed to pay, and the plaintiff brought its action to enforce its claim for a lien in a state other than that in which it had its legal residence, and in which the subcontract had been made, and the property delivered. It was held, under a statute as broad as our own, that the plaintiff could not recover; that the lien was no part of the contract, to be enforced where the contract could be enforced; that the statute was intended solely for the benefit and protection of those who performed labor or furnished material within the state of New York; and that, as the plaintiff did not furnish any material within the state, it could not have the benefit of a statute which had no extraterritorial force. With great respect for the conclusions of so eminent a court as that which rendered this decision, we are of the opinion that too restricted and limited a view was taken of the subject. It is settled that it is immaterial that the contract was made in another state; *Atkins* v. *Little,* 17 Minn. 320, (342;) *Gaty* v. *Casey,* 15 Ill. 189; and there should be no doubt but that the law-makers could, if they chose so to do, confer upon those who by contract furnish and deliver materials outside of the boundary lines of our state, designed for use within our borders, and especially where they have been brought and used herein, the right to a lien upon the premises for which the materials were intended, or have in fact become a part. The property to be affected by a lien statute is in the state, and wholly within its jurisdiction. The liens can only be enforced by the process and decrees of our courts, and nothing would stand in the way of their complete enforcement. Such a law would do no more than to prescribe the effect in this state of a combination of certain facts, part of which transpired in a sister state. The effect would be entirely within the boundaries of this state, and it would seem to follow that this effect could not, in any sense, be deemed extraterritorial. If, therefore, the

law-makers possessed the power to enact such a statute and authorize a lien, the inquiry is, have they done so? The law under which the plaintiff bases its claim for such lien (Gen. St. 1878, c. 90, § 1, *supra*) does not in terms (nor by implication can it be said) restrict the right to cases wherein the material has been purchased or actually delivered within the state. But, upon the other hand, the language used is broad and ample enough to include all who may furnish materials, whether delivered within or without the limits of our state. We are of the opinion that it does, and that plaintiff is entitled to the relief demanded. *Fagan* v. *Boyle Ice Machine Co.*, 65 Tex. 324. See, also, *Atkins* v. *Little, supra*. As was said in the Texas case, there is no valid reason why the manufacturer in another state should have a lien when he delivers his materials within the state in which they are to be used, and deprived of a lien when the delivery is at his factory. A distinction of this nature is altogether too narrow and technical unless made by the statute itself. The finding complained of was not essential to a recovery by the plaintiff.

The objections to the depositions of some of the witnesses were properly overruled. The notice, given as provided in Gen. St. 1878, c. 73, § 36, was that the testimony of Thompson, Cassin "and others," residing in Philadelphia, would be taken at a certain time and place, and under this notice the testimony of Thompson, Cassin, *Shapel*, and *Wallace* was taken, the appellant appearing, and, without objection, cross-examining each witness. Upon the return of the depositions to the district court, notice was given, in which the name of each of these witnesses appeared, that their depositions had been returned and filed. No motion to suppress either was made, and the objection upon the trial that Shapel and Wallace were not expressly named in the notice came too late.

No special mention need be made of the remaining assignments of error.

Order affirmed.