JOHN G. EMERY v. CHARLES M. HERTIG and Others.[1]

January 17, 1895.

No. 9073.

**Mechanic's Lien—Polishing Granite Columns—Knowledge of Intended Use.**

> Action to enforce a mechanic's lien for labor performed by plaintiff for a building contractor in polishing certain granite columns designed and used by the contractor in constructing a building for defendant bank. *Held*, that plaintiff was entitled to a lien, although, when he performed the work, he did not know for what particular building the columns were intended. If it was understood (as must have been from the nature of the columns) that they were intended for building purposes, and not for a general market, this was enough.

Appeal by defendants Hertig and the Merchants National Bank of St. Cloud from an order of the district court for Stearns county, Searle, J., denying their motion for a new trial. The facts are stated in the opinion. Affirmed.

*Bruckart & Brower* and *C. M. Hertig,* for appellants.

The word "for," in the first line of G. S. 1894, § 6229, means "intended for use in." No lien can be maintained for finished articles of merchandise, which have been sold without reference to their use at a fixed price to a contractor. Esslinger v. Huebner, 22 Wis. 602; Duncan v. Bateman, 23 Ark. 327; Lanier v. Bell, 81 N. C. 337; Hill v. Bishop, 25 Ill. 349; Stockwell v. Carpenter, 27 Iowa, 119; Miller v. Hollingsworth, 33 Iowa, 224; Horton v. Carlisle, 2 Disn. (O.) 184; Choteau v. Thompson, 2 Ohio St. 114. Purpose of material man and contractor must have reference to particular build-

[1] Reported in 61 N. W. 830.

ing where materials are supplied. Whittier v. Puget Sound Loan Co., 4 Wash. 666, 30 Pac. 1094; Cook v. Rome Brick Co., 98 Ala. 409, 12 South. 918.

*Geo. H. Reynolds,* for respondent.

G. S. 1894, § 6233, as construed in Wheaton v. Berg, 50 Minn. 525, 52 N. W. 926; Sandberg v. Palm, 53 Minn. 252, 54 N. W. 1109; Mc-Causland v. West Duluth Land Co., 51 Minn. 246, 53 N. W. 464; Congdon v. Cook, 55 Minn. 1, 56 N. W. 253,—is a complete answer to every point raised by the appellants.

BUCK, J. Action to enforce a mechanic's lien under Laws 1889, c. 200 (G. S. 1894, §§ 6229-6246). The Matt Breen Stone Works and Thomas M. Breen had a contract with the defendant Hertig to furnish the granite to be used in the construction of a building for the defendant bank, of which Hertig was the president. The evidence is not very clear or satisfactory as to whether Hertig made the contract with the Breen Stone Works and Breen for the bank in his representative capacity as president, or made it alone to inure to the use and for the benefit of the bank. While Hertig testified that he made the contract, he also testified that he was doing it for the bank. We do not regard this question very material, for Hertig seems to have been treated in this action as the contractor and the Matt Breen Stone Works and Thomas M. Breen as subcontractors. The granite furnished was to be used in the construction of the bank building, whoever was the owner, and without regard to who made the contract. The Breen Stone Works and Breen agreed with Hertig to furnish the polished granite columns to be used in the erection of a two-story brick and stone building to be erected on premises owned by Hertig until about August 16, 1892, when he conveyed them to the defendant bank. The building was in process of erection at the city of St. Cloud, or to be built there, and the subcontractor had stone works and stone quarries about four miles from St. Cloud, from which the granite was quarried, and about which this controversy arose. The original plaintiff, John G. Emery, was doing business under the name of the Minnesota Granite & Polishing Company, and as such the court below found that on the "21st day of October, 1892,

this plaintiff performed work and labor and furnished skill in the polishing of eight swelled granite columns of 10″ diam. x 8″ at top x 2′ 4″ long, which were used in the erection of a certain two-story brick and stone building then in process of construction upon the above-described premises, which said labor was performed and skill furnished at the instance and by virtue of a contract with the Matt Breen Stone Works and Thomas M. Breen, then and there being subcontractors of the owner of said building." The court below also found as facts that the labor and skill so furnished were worth the sum of $90; that the plaintiff filed his lien as required by law, and the defendant, the Merchants National Bank of St. Cloud, was the owner of the premises at the time of filing the lien and at the time of trial; and it adjudged that the plaintiff had a lien for said sum of $90, and costs, upon the premises, and ordered the same sold, and the proceeds applied to the payment of the lien and costs. The plaintiff's polishing works were situate about one-half mile from the stone quarry of the Matt Breen Stone Works. The defendants bring this appeal.

Before the filing of the lien, the appellants paid Breen in full for the granite columns, and the appellants contend: First. That it sufficiently appears from the facts in the case that the plaintiff did the polishing of the granite columns wholly upon the faith and credit of Breen, and that in such case Laws 1889, c. 200 (G. S. 1894, §§ 6229–6246), gave no lien. Second. That, to have a lien under said chapter 200, plaintiff must, in any event, show that he intended his work, at the time of performing the same, for some particular building, and that in this respect he failed to do so. Third. That said granite columns being manifestly ordinary personal property, and having been wholly out of the possession of Breen, and wholly in plaintiff's possession, while the work was being done, and being thereupon redelivered by plaintiff to Breen, plaintiff's proper, and in fact exclusive, remedy, if he desired to claim a lien, existed under Laws 1889, c. 199 (G. S. 1894, §§ 6247, 6248), relating to liens for work and labor on personal property.

The first section of Laws 1889, c. 200 (G. S. 1894, § 6229), provides, among other things, that "whoever performs labor or furnishes skill, material or machinery for the  *  *  *  erection, alteration, repair or removal of any house, mill, manufactory, or other building or ap-

purtenance, or of any fixture, bridge, wharf, fence or other struc-
ture, by virtue of a contract with or at the instance of the owner
thereof, or his agent, trustee, contractor, or subcontractor, shall
have a lien to secure the contract price or value of the same upon
*   *   *   such house, mill, manufactory, or other building or appur-
tenance,   *   *   *   and upon the right, title and interest of the owner
thereof in and to the land upon which the same is situate, or to
which it may be removed." It would be a useless expenditure of time
to enter into an examination of the origin of mechanic's lien laws, or to
discuss at length which is the better policy for administering them,
viz. a strict or a liberal and reasonable construction of such laws.
It is sufficient for us to say that, whatever may be the conflicting de-
cisions of other tribunals, we are of the opinion that no narrow or
limited construction of our mechanic's lien law should be indulged
in by the courts, and that the labor and industry of the country
should not be hampered by technicalities or harsh interpretations of
what was evidently intended to be a just law for the benefit of our
industrial pursuits, which tends so materially to the building of
cities and towns, and is the embodiment of so much natural justice.
He whose property is enhanced in value by the labor and toil of oth-
ers should be made to respond in some way by payment and full sat-
isfaction for what he has secured. To accomplish this result is the
intent of the lien law.

It will be observed that the language of the statute is very broad
in respect to creating and preserving the lien for labor and skill. It
does not say that such lien shall exist only when the labor has been
done or skill furnished for a certain specified, definite, or particular
house or building, but for any house or any building. It is a well-
known fact and matter of common knowledge that there are ex-
tensive stone quarries in this state, operated upon a vast scale by
contractors and quarrymen, getting out, cutting, dressing, and pre-
paring stone to be used in the erection of various buildings, many
of them of great value, and some of them taking several years in
their completion. These stones are not placed on the market gen-
erally, to be sold in the course of trade like wares and general mer-
chandise, such as wagons, sleighs, plows, hardware, dry goods, fur-
niture, and farm machinery, but such stones are generally cut,
dressed, and prepared at or near the quarry from which they were

originally obtained, and in some instances upon the grounds where the building is to be erected. Each person who contemplates building or erecting a house or building is presumed to know the law, and, if he enters into a contract with other persons to build such house or building upon condition that they provide the labor and material and furnish the skill, then, in such case, he is presumed to know that such house or building is liable to a mechanic's lien therefor. Labor cannot be robbed of its reward because the builder or owner of the property does not know just who the individual is who has done or is to do the labor upon any particular piece of material, or who furnishes the skill which contributes to the erection and completion of the building. It is his duty to know these things, for the mechanic's lien law warns him of the danger if he negligently or willfully refuses to ascertain the person who by his labor or skill has added to the value of the property or estate. The law does not make it a prerequisite to the creation of the lien that the laborer shall hunt up or find out who is the owner of the premises upon which the building is to be erected, or who the person is who is building it for his own pleasure or benefit. The lien springs into life the moment the work, labor, or skill commences, and is preserved and made effectual by certain statutory proceedings. It was not a right existing at common law, but one given by statute; and this right and the remedy for its enforcement have been gradually developing in aid of the enforcement of the lien. Hardships may sometimes and undoubtedly do arise under the lien law to the owner of the premises, but greater hardships would more frequently arise to the laborer if no lien law existed.

In this case the defendant Hertig claims to have paid the subcontractor the value of the plaintiff's services in polishing these granite columns, but we must remember that he was the one who gave to the subcontractor the power to commit the fault; that is, he contracted with him for these columns, and thus gave him power to employ skilled workmen to do the work. Now, the familiar legal principle should be applied that, if one of two innocent parties must suffer a loss, it should fall upon the one who gave to a third party the power to commit the fault. Hertig says that he supposed that the Breens did their own polishing, but states no grounds upon which he based this supposition. No one appears to have given him

any such information. On the contrary, he visited their works, and had ample opportunity for observing any such work or process, if they had possessed such facilities for polishing granite. It necessarily requires great skill in doing this kind of work, and we do not see why his attention was not drawn to the absence of any such facilities for doing this skilled work. That he had the columns and used them in the erection of the bank is unquestioned. The plaintiff, after he had performed this skilled work upon the columns, saw them lying upon the premises of the defendant bank, and saw them after they were put into the bank building. The plaintiff undoubtedly knew when he did the labor upon these columns that the Breens were not having the work done for any building of their own, but that, as quarrymen and subcontractors, they were having them prepared for some other building. Therefore, when the law gave to plaintiff the right of lien for his labor when done or furnished for any building, he had a right to rely upon that law for his protection as against its owner, the value of whose property had been thus enhanced. Contracts for the erection of buildings, where labor and skill are furnished for such purpose, must be considered as made subordinate to the mechanic's lien law, and as though the law entered into and formed a part of the contract itself. If this were not so, there would be but little protection for the mechanic whose labor had contributed to improve and benefit the property.

It is earnestly contended by the appellants that, as it does not appear that the plaintiff furnished the skilled labor on the credit of the building, he cannot recover, and that as he did not know, when he was doing the labor, into what building the granite columns were to be placed, he could not have done the labor on the credit of the building. If these columns were not furnished by the plaintiff upon the "credit of the building," in the technical sense in which that term is ordinarily used, yet, as the statute creates this credit, and carries it to every laborer performing work and furnishing skill in cases of this kind, we may, not inappropriately, say that in law such labor and skill were furnished on the credit of the building, and that the laborer may safely rely upon such credit in the performance of his work and furnishing such skill. No formal words need take place between the parties as to the creation of the lien. It is doing the work and furnishing the skill that enables the laborer to say

that, when he has done everything which the statute requires, he has a lien upon any building into which his labor and skill have entered, and that such services have been done on the faith and credit of the building, and that it should be held as security for the payment of the value of such labor or skill. Of course, this doctrine is only applicable where the material, labor, or skill is furnished for a purpose named in the statute; and it would not be applicable to a class of material or merchandise placed upon the market for ordinary sale on credit, and intended to pass from one vendor to another, or used for speculative purposes, instead of its being intended by the material man for use directly in the construction of some permanent structure. In this case the granite columns were evidently of the class of products intended for immediate use in some building; and when our statute gives a lien for such labor or skill for any building, it plainly distinguishes it from such material as may be produced for ordinary sale upon credit in the markets of the country. All of the parties to this transaction must have mutually understood that the purpose for which these columns were prepared was for use in the construction of some building, and not for some general and unknown purpose. It was not necessary that the plaintiff should have known that these columns were to be used in the erection of the identical building for which the subcontractor or owner of the building intended them. The plaintiff's right to a lien under the circumstances was as perfect as though the particular building had been pointed out by all of the other parties. In the case of Atkins v. Little, 17 Minn. 320 (342), it was held substantially that, where materials are furnished towards repair of a building, it is not necessary that the articles should have been furnished by the material man with knowledge of the identical building for which they were intended. If the understanding was that they were purchased for building purposes, this is enough. See, also, Choteau v. Thompson, 2 Ohio St. 114, and Cotes v. Shorey, 8 Iowa, 416.

It is further contended by the defendants that plaintiff had a lien under Laws 1889, c. 199 (G. S. 1894, §§ 6247, 6248), relating to liens upon personal property. Whether he had or not is immaterial, for chapter 200 of the Laws of that year expressly gives mechanics a lien for their labor and skill when they enter into the erection of buildings upon real estate, and such lien cannot be defeated because

a lien might possibly exist under another law.  Nearly, if not all, of the material which enters into and constitutes our buildings was, prior to its becoming so, personal property, and the claim of appellants that the mechanics have a remedy only under chapter 199 would render chapter 200 substantially nugatory.  We have not discussed the question of the refusal of the trial court to pass upon certain questions for the reason that counsel have not seen·fit to discuss them.

The order denying the motion for a new trial is affirmed.

CANTY, J., concurs in the result.