ORTONVILLE ELEVATOR & MILLING COMPANY v. PETER
LUFF.[1]

May 18, 1917.

Nos. 20,128—(42).

**Bills and notes — estoppel.**

Defendants, partners, executed their joint and several note to plaintiff, a corporation, for a debt justly due it from the partnership. Appellant, one of the partners, was not interested in the corporation, but the other maker of the note was its general manager. For convenience, the cashier of a bank, where it was expected the note would be negotiated, was named as payee. Three months after the note was given the partners dissolved, and appellant purchased all the assets and property of the partnership, and, as part of the purchase price, agreed to pay specified debts, the note in suit not being one. In the transaction appellant's copartner stated that the partnership owed no other debts to the bank or its cashier than the ones specified. The nominal payee named in the note never acquired it for his own use or the use of the bank, and indorsed it without recourse to plaintiff before suit. *Held*:

Plaintiff was not estopped by the statement of its general manager, appellant's copartner, made in the sale of the partnership property, for in that transaction plaintiff had no interest; nor can appellant well urge estoppel, since he does not claim to know that the note was given to plaintiff, hence could not have been misled by the copartner's omission to call attention to it; nor can appellant urge estoppel on account of the cashier's representations as to the copartnership indebtedness to the bank, for the note was not held by the bank, and appellant does not claim that he knew or understood that it was so held or that the cashier was named payee.

Action in the district court for Big Stone county to recover $975 upon a promissory note. The case was tried before Flaherty, J., who granted plaintiff's motion for a directed verdict in its favor. From an order denying his motion for a new trial, defendant appealed. Affirmed.

*Ray G. Farrington,* for appellant.

*Cliff & Purcell,* for respondent.

[1]Reported in 162 N. W. 885.

HOLT, J.

Under the court's instruction the jury returned a verdict against appellant for the amount of the promissory note in suit. He appeals from the order denying a new trial.

Plaintiff is a corporation, and for many years has been engaged in the grain and milling business at Ortonville. During the time herein referred to, F. W. Sanborn was the general manager thereof, and also an officer and stockholder. For several years, and up until June 20, 1912, Sanborn and appellant were partners in the transportation business and other enterprises on or about Big Stone lake. While such partners they bought a section of land bordering the lake. The partnership had no money available to pay for the land, but it was bought in plaintiff's name and with its money to the extent of $8,250, the balance of the purchase price, namely, $8,000, was secured by note and purchase-money mortgage. The understanding between plaintiff and the partnership was that the latter would reimburse the former for all money advanced or paid in the venture. The purchase was for the sole benefit of the partnership. On March 11, 1912, a year's interest, amounting to $975, had been advanced by plaintiff on the deal. Appellant and Sanborn then signed and delivered to plaintiff their demand promissory note for that sum payable to the order of John Michell, the cashier of the First National Bank at Ortonville. The intention was that, as soon as the credit of the partnership at the bank would permit, the note would be negotiated there, and the money given to plaintiff. John Michell was merely a nominal payee who never acquired the note for his own or the bank's use. Before suit he indorsed it without recourse to plaintiff, the actual owner. Both makers were made defendants, but apparently appellant alone was served.

The defense pleaded, and to which the proof was directed, is in substance this: F. W. Sanborn was the general manager of plaintiff, kept its books, and had exclusive charge of its business, at the same time he kept the books of the partnership and was thoroughly familiar with its affairs. Appellant had access to the books of the firm, but, because most of his time was devoted to the outside active operation of the business, he claims to have been not so well informed concerning the liabilities of the concern as was Sanborn. In June, 1912, Sanborn sold all his interest

in the assets and property of the firm to appellant, the consideration being $4,000 in cash, or secured paper, and the assumption of all the then debts of the firm to John Michell and the bank. (The parties evidently considered Michell and the bank as one and the same creditor.) It is claimed that this indebtedness was understood to be about $10,000; that Sanborn gave appellent a written statement of the items thereof, but that the note in suit was not among them; that before appellant made the deal he inquired of John Michell whether or not the statement was correct and was assured that it was; that appellant had no knowledge of the amounts due Michell or the bank, and depended solely on Sanborn for information in that respect and that appellant believed the note in suit had been paid and knew nothing to the contrary.

Do the facts pleaded by appellant, and his proof and offer of proof, tend to make out a defense which should have been submitted to the jury? We think not. Plaintiff had advanced the $975 for the partnership. Appellant and Sanborn signed and delivered the note in adjustment of this sum, justly due plaintiff. What transpired subsequently between the makers of the note could not affect the rights of plaintiff, the owner and holder thereof, for it took no part therein and was not benefited thereby. Plaintiff had no interest in the partnership so as to be bound by any statement made by Sanborn in the sale to appellant. First Nat. Bank v. Bailey, 127 Minn. 296, 149 N. W. 469. In that transaction Sanborn acted solely for his own personal interest, and appellant had no reason to assume that he therein spoke or acted as manager for the corporation. Even were this action one by Sanborn for contribution after having paid the note, it would be difficult for appellant to urge estoppel. Sanborn made no representation orally or in the alleged written statement as to other firm debts than the ones to Michell or the bank. Appellant in the purchase assumed those alone. This note was never held by Michell or the bank. Appellant alleged that he believed it paid; this inferentially admits that he knew of its execution and he could not well do otherwise, for he knew that it was secured by a chattel mortgage on partnership property which he had signed also. That he overlooked or forgot about this outstanding note when the partnership was dissolved, does not release him, or, for that matter, Sanborn, if he likewise forgot. At most it was a mutual mis-

take, for neither pleadings nor proof suggested fraud. If the partners in the dissolution intended to adjust as between themselves all the firm indebtedness, and by mistake overlooked this note, no legal harm could come to either one. Their liability simply remained as before. We cannot see that either partner stood to gain or lose anything whatever from the fact that this note did not come to their attention at the time Sanborn sold out his interest to appellant. The price was fixed at $4,000 cash, or its equivalent, and the payment of the partnership debts to the bank. These were known and tabulated. All other debts not so tabulated remained the joint debts of the partners, and neither partner could shift the burden to the other so far as creditors were concerned. Indeed, there is no pretense that there was any agreement between the defendants as to any other debts or notes than the ones specified in the so-called statement exhibited to appellant, and the note in suit was not there mentioned.

We see no force in the contention that Michell was plaintiff's agent, so that Michell's assuring appellant that he or the bank held no claims against the partnership, other than those specified upon the statement furnished by Sanborn, should estop plaintiff from asserting its rights as owner and holder of the note. Simply because the note was for the convenience of the parties made to Michell as payee did not constitute him an agent, at least not until the note had been delivered to him. There was no proof or offer of proof that it ever had come into Michell's hands or that he knew anything about the arrangement between the parties. Appellant, to be sure, says he did not know he had signed a note purporting to run to Michell as payee, but he really admits the execution of the note and mortgage to cover this $975 interest, advanced by plaintiff, and says he thought it had been paid. It is difficult to see how he can advance the theory of Michell's agency and consequent estoppel, if he did not have in mind the form of the note. He admits that he did not ask Sanborn whether the interest advanced of $975, or the note representing it, in whatever form made, had been paid when the partnership deal was closed.

Assuming as true all that defendant pleaded, proved and offered to prove, we nevertheless reach the conclusion that no valid defense was made out. Order affirmed.