## ALBERT AND HARLOW, INC. v. GREAT NORTHERN OIL COMPANY AND OTHERS.
## AMERICAN OIL COMPANY, APPELLANT.

167 N. W. (2d) 500.

April 18, 1969—No. 41092.

*Murnane, Murnane, Battis, deLambert & Conlin* and *E. W. Murnane,* for appellant.

*O'Connor, Green, Thomas, Walters & Kelly, Joe Walters,* and *Charles B. Faegre,* for respondent.

Heard before Knutson, C. J., and Nelson, Sheran, Peterson, and Frank T. Gallagher, JJ.

SHERAN, JUSTICE.

Appeal by American Oil Company from an order of the district court denying its motion for amended findings or in the alternative, for a new trial.

Respondent, Great Northern Oil Company, a Delaware corporation with its principal place of business in Dakota County, refines petroleum and its byproducts. In April 1964, it contracted with Pipeline Technologists, Inc., to plan, design, and supervise the construction of a pipeline to be used for transporting petroleum products from Great Northern's refinery near Pine Bend, Minnesota, to a terminal at Junction City, Wisconsin. Pipeline Technologists, in turn, engaged Osage Construction Company, an Oklahoma corporation, to construct the pipeline. The line, in place, spans a distance of approximately 171 miles. Seventeen miles of it is in Minnesota; the balance, in Wisconsin.

While engaged in the performance of the construction contract, Osage obtained the petroleum products it needed from the American Oil Com-

pany on credit. The total value of these materials was about $35,000. Of this amount about $8,000 was used during construction of the segment of the line located in Minnesota, with the balance of the bill being for materials used during the course of constructing the Wisconsin segment.

American Oil filed a notice of lien claim upon the Great Northern pipeline on January 29, 1965, for the full amount of its bill. This notice was filed approximately 41 days after the last item of material was furnished by American Oil to Osage for use on that part of the pipeline which is located in Wisconsin, but approximately 127 days after the last item used in connection with the construction in Minnesota was furnished.

In proceedings to foreclose the lien, the trial judge found in favor of Great Northern upon the ground that the lien rights of American Oil were limited to the price or value of the material furnished in Minnesota, and, as to this portion of the claim, the notice of intent to claim a lien was ineffectual because filed more than 90 days after the last item of material was furnished for use in Minnesota.

Chapter 514 of the Minnesota Statutes affords a lien to those who contribute to the improvement of the property of others. It is specifically provided by Minn. St. 514.04 that if the contribution be made for the construction of any line of pipe, the person furnishing the material shall have a lien upon the line so improved, and upon all the "rights, franchises, and privileges of the owner appertaining thereto." It has been held in Minnesota that one supplying material such as petroleum products to a builder who uses such products while engaged in the construction of the improvement is a person furnishing lienable materials within the meaning of our statute. Johnson v. Starrett, 127 Minn. 138, 149 N. W. 6, L. R. A. 1915B, 708. However, it is provided by the terms of § 514.08 that "[t]he lien shall cease at the end of 90 days after * * * furnishing the last item of such * * * material * * * unless within such period a statement of the claim therefor, be filed for record * * * with the secretary of state." It is required by § 514.08(4) that the notice disclose the dates when the first and last items of the claimant's contribution to the improvement were made. An action to foreclose pursuant to § 514.10 may be brought in any county through or into which the line

extends. Section 514.12, subd. 3, provides that no lien shall be enforced in any case unless the holder thereof shall bring action to foreclose within 1 year after the date of the last item of his claim as set forth in his recorded lien statement. Where the material is furnished as a part of one continuous transaction, the time limitations run from the date on which the last item was furnished. 36 Am. Jur., Mechanics' Liens, §§ 138, 139.

There is no provision of our statute which deals specifically with the problems which arise when a single pipeline construction contract results in the installation of a line located partly within the territorial limits of the State of Minnesota and partly within the territorial limits of a sister state.

The decision of the trial judge that American Oil was not entitled to a lien to secure payment for any of the materials furnished during the course of the construction project brings to this court three questions raised by the appeal:

(1) Is a notice of intent to claim a lien filed within 90 days after the last item of material was furnished on account of a single, unitary construction contract timely even though more than 90 days had elapsed from the date on which the last item of such material was furnished for use in the State of Minnesota?

(2) If the answer to this question is in the affirmative, is the supplier entitled to claim a lien under our statutes against that part of the pipeline located outside Minnesota?

(3) If the answer to the last question is in the negative, is the lien claimant entitled to a lien on that part of the pipeline located in Minnesota for the full price or value of the materials furnished on the entire project, or must the extent to which his lien claim is enforceable as against the property located in Minnesota be limited to the price or value of the materials used on the portion of the project located here?

■ Because appellant furnished the petroleum products involved under a single, unitary contract which was not performed until the last item of material was furnished in Wisconsin, we believe the 90-day period to which reference is made in § 514.08 commenced to run when that last item was furnished even though this event occurred in the State of Wisconsin.

Although the rights of the parties must be governed by the language of the mechanics lien statute (M. E. Kraft Excavating & Grading Co. Inc. v. Barac Const. Co. 279 Minn. 278, 156 N. W. [2d] 748, and Rueben E. Johnson Co. v. Phelps, 279 Minn. 107, 156 N. W. [2d] 247), we have consistently held that the lien laws, being remedial in nature, should be liberally construed so as to protect those who furnish material or services for the improvement of the property of another. Emery v. Hertig, 60 Minn. 54, 61 N. W. 830; O. B. Thompson Elec. Co. v. Milliman & Larson, Inc. 268 Minn. 299, 128 N. W. (2d) 751; Armco Steel Corp. v. Chicago & N. W. Ry. Co. 276 Minn. 133, 149 N. W. (2d) 23.

The arrangement involved called for deliveries both in Minnesota and Wisconsin. The lien statement of January 29, 1965, was filed approximately 41 days after the last delivery in Wisconsin on December 18, 1964. Had this delivery been made in Minnesota, the timeliness of the filing of the notice would be clear. Kahle v. McClary, 255 Minn. 239, 96 N. W. (2d) 243.

A principal purpose of the requirement that the notice of intent to claim a lien be filed by a supplier within a specified time is to put the owner on notice that the contractor is not paying his bills. So notified, the owner can protect himself by withholding final payments or resorting to a performance bond if one was required and furnished. So considered, it is immaterial whether the last item was furnished in Minnesota or elsewhere. We do not encroach upon any governmental interest of the State of Wisconsin by referring to an event occurring in that state for the commencement of the 90-day limitation period. In Thompson v. St. Paul City Ry. Co. 45 Minn. 13, 47 N. W. 259, decided in 1890, our court, in declaring material to be lienable even though delivered outside of the State of Minnesota, said (45 Minn. 15, 47 N. W. 260):

"* * * The property to be affected by a lien statute is in the state, and wholly within its jurisdiction. The liens can only be enforced by the process and decrees of our courts, and nothing would stand in the way of their complete enforcement. Such a law would do no more than to prescribe the effect in this state of a combination of certain facts, part of which transpired in a sister state. The effect would be entirely within the boundaries

of this state, and it would seem to follow that this effect could not, in any sense, be deemed extraterritorial."

Although not directly in point, the Thompson case stands for the proposition that the facts relevant to the enforceability of a mechanics lien need not necessarily have occurred in this state.

We have examined the provisions of c. 514 with care and find no language suggesting that in a situation such as this, the date on which the last item of the claimant's contribution to an improvement pursuant to a unitary contract should be made to depend on the place where the claimant's contribution to the improvement was made. Because the purpose of the time limitation for the filing of the notice is the same whether the contract be completed in this state or elsewhere, we conclude that the notice was filed within the time limited by the statute.

■ The fact that the notice was filed within the time prescribed does not mean that the lien can be enforced on property outside of this state. Recognition of events occurring in another state for time-limitation purposes does not affect title to real estate located there. When Minnesota undertakes to create a lien or other charge on property located beyond our territorial limits we become involved with the policy considerations which govern interstate relations. The primacy of a state's control over land located within its territorial boundaries has been universally recognized. The principle is summarized in this way in 15A C. J. S., Conflict of Laws, § 19 (1):

"Immovable property is exclusively subject to the laws of the government within whose limits it is located, and it is a rule firmly established by numerous decisions that the law of the jurisdiction in which such property is situated controls and governs its acquisition, disposition, and devolution. The primary reason for the existence of the rule lies in the fact that lawmaking and law enforcement agencies of the country in which the land is situated have exclusive control over such land. The rule is generally considered to be universal, applying generally to all property classed as immovable, and operates between the several states of the United States as well as between countries entirely foreign to each other. It is not in the power of any state by any legislative act to prescribe the mode in which

lands in another state may be disposed of or title thereto passed from one person to another." [1]

Constitutional considerations aside, we do not think that the Minnesota Legislature would undertake to subject realty in a sister state to a statutory lien without spelling out clearly and unequivocally the circumstances under which this might be done. Nothing in our lien law suggests even inferentially such an intent on the part of the legislature. From this we conclude that the right to claim a lien pursuant to c. 514 is limited to interests existing in this state.

The conclusion which we have reached on this question is supported by decisions from other jurisdictions involving lien claims resulting from the construction of railroads. It appears to be held uniformly that a lien cannot be claimed under the law of one state on an improvement existing in another. Midland Valley R. Co. v. Moran Bolt & Nut Mfg. Co. 80 Ark. 399, 97 S. W. 679; Bagnell Timber Co. v. Missouri, K. & T. R. Co. 180 Mo. 420, 79 S. W. 1130; Allied Thermal Corp. v. James Talcott, Inc. 3 N. Y. (2d) 302, 165 N. Y. S. (2d) 91, 144 N. E. (2d) 66, affirming 3 App. Div. (2d) 198, 159 N. Y. S. (2d) 115; Burack, Inc. v. Simpson Factors Corp. 21 App. Div. (2d) 481, 250 N. Y. S. (2d) 989. Cases, such as Title Ins. & Trust Co. v. California Development Co. 171 Cal. 173, 152 P. 542, involving an action to foreclose a lien created by agreement of the parties are not relevant to the question of whether our legislature intended by the enactment of c. 514 to create a lien upon immovables located in a sister state.

■ Having determined that the notice of the lien claim was timely but that imposition of the lien on lands lying in a sister state could not have been intended by our legislature, we are left with the question of whether the full amount of the claim can be imposed as a lien on so much of the pipeline as does lie within the confines of Minnesota.

Here again we suffer from the lack of a specific statutory provision dealing with this kind of situation and must resort to general considerations of the purpose and object of the law in an effort to find the legislative intent. The basic legislative intent which underlies our lien law is that one "whose

---

[1] To the same effect, see 16 Am. Jur. (2d) Conflict of Laws, § 14.

property is enhanced in value by the labor and toil of others should be made to respond in some way by payment and full satisfaction for what he has secured." Emery v. Hertig, 60 Minn. 54, 57, 61 N. W. 830, 831. This purpose of the law implies that there is a direct relationship between the value contributed to the property by the lien claimant and the extent of the lien granted.

The burden of a statutory lien upon real estate or other immovables is a considerable one. If the claim is unpaid, the lien may be enforced by an action begun and conducted in the same manner as actions for the foreclosure of mortgages upon real estate. § 514.10. In order to relieve the property from the burden of the lien, the owner must pay the claim or make a deposit in an amount fixed by the court to stand as security in place of the lien. At best, foreclosure proceedings embarrass the owner of property. At worst, where the amount of the lien exceeds the value of the property, foreclosure may result in transfer of title from one who maintains ownership for a special and valuable use to one who has no particular need for the property except as a device for collecting his debt. In such a case, the result is a net economic loss to the state. In the present case, for example, the value of this pipeline in the hands of Great Northern far exceeds any value it could have in the hands of the lien claimant. Great Northern has a special economic use for it; American Oil does not.

The extreme situation where the amount of the lien claim exceeds the value of the property improved is not likely to occur if the items of labor and materials on account of which a lien can be asserted are limited to those which serve to improve the specific property with respect to which the lien can be asserted. So limited, it can be assumed generally that the value added to the property by the labor or materials contributed would be at least equal to the amount of the lien claim. A direct relationship between the value added and the amount claimed would probably exist. But this would not be the case if property in Minnesota is subjected to liens for labor and materials contributed to the improvement of immovables located elsewhere.

Had the legislature intended by the enactment of c. 514 to permit Minnesota property to be subjected to a lien for improvements in a sister state, it would have created a situation where an improvement made in a place

where it has neither power nor responsibility could become a burden of a serious nature upon property within the territorial limits of this state, where it has both power and responsibility. This could cause great difficulties for the Minnesota owner. In addition, and quite apart from the personal welfare of the owner, Minnesota, as a state, has a real interest in preserving the value of property located here. For example, the power to raise revenue by taxes and the value of property subject to taxation are closely connected. For the legislature to encourage the improvement of Minnesota property by granting a lien to those who add to its value is one thing; to grant a lien on Minnesota property to those who add wealth to Wisconsin's territory is something else again. We do not think it likely that the Legislature of the State of Minnesota intended by the enactment of the Mechanics Lien Law to make a benefit to Wisconsin property over which it has no jurisdiction a burden on Minnesota property over which it does. In the absence of clear statutory direction, we are unable to attribute such an intent to Minnesota's lawmakers.

Our decision in Brown v. Marine Home Tel. Co. 137 Minn. 460, 162 N. W. 884, decided in 1917, holding a Minnesota telephone line subject to a lien for labor performed on a part of it in Wisconsin is not entirely consistent with the views expressed to this point. In that case we said (137 Minn. 460, 162 N. W. 885):

"The only important question presented is whether the court erred in giving a lien upon the lines in this state for the labor performed upon the line in Wisconsin. * * * Aside from this its entire plant is in Minnesota, and this Wisconsin line can only be used through the medium of the switch board and office in Minnesota. It is useless except as an adjunct to the Minnesota system. We think that the fact that the lien claimants performed a part of their work in Wisconsin by direction of defendant, does not debar them from enforcing a claim for the full amount of their wages against the main plant in Minnesota."

We think, however, that the Brown case is a holding which should be limited to its facts. There the amount of the claim for labor attributable to work done on property located in Wisconsin was minimal. The burden that recognition of the claim placed on Minnesota property was negligible.

The facts of that case did not confront this court with the necessity of considering the long-range implications of enforcing liens for substantial amounts upon Minnesota property for improvements located elsewhere.

It may be true that in the case before us the segment of the pipeline located in Minnesota could withstand the lien impact of the full $35,000 claimed without serious difficulty. But this particular claim is limited to a bill for petroleum products used only indirectly in the performance of the contract. If we accede to the principle that the full amount of this claim is lienable as against the portion of the line located in Minnesota, we must, in the next case of a similar nature and on the same principle, allow lien claims for improvements on property in other jurisdictions for all of the labor and materials which went into the job there. Although we recognize the justice of American Oil's claim that it should be paid, we find ourselves unable to believe that the legislature intended by the enactment of our Mechanics Lien Law to permit Minnesota property to be subjected to a burden of this potential magnitude on account of the improvement of immovables over which Minnesota can exert no control.

Our conclusion is that appellant has a lien on so much of the pipeline as was constructed in the State of Minnesota for so much of the materials as were used here. The case is remanded to the district court to permit amendment of the findings of fact and conclusions of law in conformity with our decision.

Affirmed in part, reversed in part, and remanded for further proceedings.