PREMIER BANK, Appellant,

v.

BECKER DEVELOPMENT, LLC, et al., Respondents,

Nancy C. Buehler, et al., Respondents,

Pamela J. Noll, Respondent,

Bauerly Brothers, Inc., Respondent,

Kuechle Underground, Inc., Respondent,

John Oliver & Associates, Inc., Respondent,

and

Premier Bank, Appellant,

v.

Boone Builders, Inc., et al., Respondents,

Kuechle Underground, Inc., Respondent,

John Oliver & Associates, Inc., defendant and third-party plaintiff, Respondent,

v.

Boone Family Investments, LLC, et al., third-party defendants, Respondents.

Nos. A08–1252, A08–1700.

Supreme Court of Minnesota.

July 22, 2010.

Katherine M. Melander, Stephen F. Buterin, Coleman, Hull & van Vliet, PLLP, Minneapolis, MN; and Scott S. Payzant, Thomas C. Atmore, Leonard, O'Brien, Spencer, Gale & Sayre, Ltd., Minneapolis, MN, for appellant Premier Bank.

Aaron A. Dean, Jesse R. Orman, Fabyanske, Westra, Hart & Thomson, PA, Minneapolis, MN, for respondent Kuechle Underground, Inc.

Bradley N. Beisel, David J. Krco, Beisel & Dunlevy, PA, Minneapolis, MN, for amicus curiae Minnesota Land Title Association.

## OPINION

DIETZEN, Justice.

In this consolidated action, appellant Premier Bank brought a lawsuit to foreclose its development mortgage (development mortgage action), and another lawsuit to foreclose three construction mortgages (construction mortgage action) arising out of a residential development project. The general contractor, respondent Kuechle Underground, Inc. (Kuechle), filed a blanket mechanic's lien under Minn.Stat. § 514.09 (2008), against the 59 lots of the project, and sought to foreclose the lien against the three model-home lots of the project upon which it enjoyed a first-priority lien. Both parties moved for summary judgment and the district court, among other things, granted Premier Bank a decree

of foreclosure in the development mortgage action and for the 59 lots in the construction mortgage action, except for the three model-home lots. The district court granted Kuechle a decree of foreclosure against the three model-home lots, concluding that section 514.09 allowed Kuechle to foreclose its entire lien against the three model-home lots.[1] The court of appeals affirmed the district court's ruling that section 514.09 allowed Kuechle to foreclose its blanket mechanic's lien against less than the 59 lots that are property subject to the lien. Subsequently, we granted review. Because we conclude that section 514.09 does not allow a lien claimant to foreclose a blanket lien against less than all of the property subject to the lien, we reverse and remand.

The material facts are undisputed. River Bend is a residential housing development located on 40 acres in Becker, Minnesota. The project originally contemplated developing the property into approximately 150 lots in three phases.

In September 2005, Premier Bank entered into a loan agreement with Becker Development, LLC (Becker), in which Premier Bank agreed to lend Becker $3.2 million for the purchase of the land and the cost of the site work required to develop the land. Becker executed a promissory note in favor of Premier Bank, and Becker and Boone Family Investments, LLC, jointly executed a mortgage to secure the loan. The mortgage was recorded in September 2005.

In February 2006, Premier Bank entered into three loan agreements with Boone Builders, Inc., for the construction of three model homes, each on its own lot

1. Kuechle did not appeal the decree of foreclosure in favor of Premier in either the development mortgage action or the construction mortgage action as to the 56 lots upon which Kuechle did not have priority. It is only the three model-home lots in the construction action that are at issue in this appeal.

in the project, in the amounts of $233,000, $243,000 and $252,000. Boone Builders executed three mortgages in favor of Premier Bank, one mortgage for each lot. One mortgage was recorded in February 2006 and the other two mortgages were recorded in April 2006.

In April 2006, Kuechle and Becker entered into a written contract in which Kuechle agreed to serve as the general contractor for the project, and perform the site work for the project consisting of initial grading, and street and sewer work. Previously, the parties had entered into an oral agreement that was consistent with the written contract and Kuechle had begun its first visible work on the project in October 2005.

In October 2006, Premier Bank and Becker, together with Boone Family Investments, entered into a loan modification agreement that extended the maturity date of the promissory note. As part of that agreement, Premier Bank released its mortgages on the three model-home lots. The site work for the first phase of the project was completed, and the property improved consisted of 52 lots and 7 outlots. Becker paid Kuechle $817,108, which left an unpaid balance of $266,623.[2] In February 2007, Kuechle served and filed its mechanic's lien statement for the unpaid amount against all 59 lots in the project.

Becker defaulted on its $3.2 million development loan, and Boone Builders defaulted on its three construction loans. Premier Bank then commenced two separate foreclosure actions. In the first action, Premier Bank sought to foreclose the $3.2 million development mortgage (development mortgage action). It alleged that Becker was in default, that its mortgage had first priority, and that it was entitled to foreclose and a decree of foreclosure.

In the second action, Premier Bank sought to foreclose its three mortgages securing the three construction loans to Boone Builders for the construction of the three model homes (construction mortgage action). Premier Bank named Kuechle and other lien claimants as defendants in both actions. In each action, Kuechle asserted various claims and sought to foreclose its mechanic's lien.

The district court consolidated the two actions, and Premier Bank and Kuechle brought cross-motions for summary judgment. In the development mortgage action, the court ruled, among other things, that Premier Bank's mortgage was prior and superior to Kuechle's lien. Also, the court denied Kuechle's lien-foreclosure claim against the non-model-home lots because the bank's mortgage was recorded before the first visible improvement to the project. Thus, the district court granted Premier Bank a decree of foreclosure in the development mortgage action and entered judgment against Becker for the full amount of the loan. In the construction mortgage action, the court granted Kuechle's motion for summary judgment reasoning that Kuechle's mechanic's lien had priority over Premier Bank's construction mortgages as to the three model-home lots released by the loan modification agreement. The court concluded that Kuechle could foreclose its entire lien claim against the three model-home lots because Minn.Stat. § 514.09 did not require the lien to be foreclosed against all 59 lots.

In a published opinion the court of appeals reversed the district court and concluded, among other things, that under Minn.Stat. § 514.09 a mechanic's lienholder who has perfected a blanket lien may

---

2. The original contract price was $931,037. Subsequently, Becker and Kuechle adjusted the contract price to $1,083,731 to cover additional work on the project.

foreclose the entire amount against less than all of the property subject to the lien. *Premier Bank v. Becker Dev., LLC*, 767 N.W.2d 691, 702 (Minn.App.2009). Thus, the court determined that Kuechle could foreclose the entire amount of its lien in the construction mortgage action against the three model-home lots. *Id.* Subsequently, we granted review.

### I.

■ Premier Bank argues that the court of appeals erred in concluding that Minn.Stat. § 514.09 allows a lien claimant to foreclose the full amount of its lien against less than all of the lots subject to the lien. It contends that when a lien claimant files a blanket lien under section 514.09 against all the property improved by its work on a project, the statute requires that the lien claimant foreclose its lien as a single lien against all of the lots improved.[3] Kuechle argues that the court of appeals' decision should be affirmed because section 514.09 allows a lien claimant to file a blanket lien against all lots of a project and foreclose its lien on less than all of the lots encumbered by the lien.

### A. Standard of Review

■ We review a decision to grant or deny summary judgment de novo. *Kratzer v. Welsh Cos.*, 771 N.W.2d 14, 18 (Minn.2009). In doing so, we determine if the law was properly applied and whether there were genuine issues of material fact that precluded summary judgment. *Id.*

Here, the material facts are undisputed and the question presented turns on the interpretation of section 514.09, which is a question of law that we also review de novo. *Eischen Cabinet Co. v. Hildebrandt*, 683 N.W.2d 813, 815 (Minn.2004).

■ Minnesota's mechanic's lien statute allows a person or entity that contributes to the improvement of property through labor, skill, material, or machinery to place a lien against the property improved.[4] *See* Minn.Stat. § 514.01 (2008). But a lien claimant must follow the statutory procedures to perfect a mechanic's lien. Generally, a lien claimant must (1) provide notice to the owner of the work or materials provided within 45 days after the work or materials are provided, Minn.Stat. § 514.011 (2008); (2) file a proper statement of claim within 120 days of the last work or materials provided, Minn.Stat. § 514.08 (2008); and (3) file a lis pendens notice and commence an action against the owner within one year after the last work or materials provided, Minn.Stat. § 514.12 (2008). *In re Zachman Homes, Inc.*, 47 B.R. 496, 514–15 (Bankr.D.Minn.1984).

Kuechle argues that section 514.09 must be liberally construed in favor of mechanic's lien claimants because the statute is silent, and therefore ambiguous, as to whether Kuechle may foreclose the full amount of its blanket lien against less than all of the lots encumbered by the lien. Kuechle relies on case law to argue that mechanic's lien laws are strictly construed as to whether a lien attaches, but are

---

**3.** Premier Bank attempts to bolster its argument by pointing to Minn.Stat. § 515B.3–117(a) (2008), which mandates pro rata apportionment of blanket mechanic's liens for common interest ownership communities, thereby prohibiting apportionment of a blanket mechanic's lien against less than all of the property subject to the lien. Although River Bend was once declared a common interest community, the ownership of some of the lots

has changed and that declaration is no longer valid. Therefore, we do not consider Minn. Stat. § 515B.3–117(a) in our analysis.

**4.** Minnesota's mechanic's lien statute was enacted in 1858. Act of Aug. 12, 1858, ch. 54, §§ 1–18, 1857–58 Minn. Laws 121, 121–26 (codified as amended at Minn.Stat. §§ 514.01–.17 (2008)).

liberally construed after the lien has been created. *See S.M. Hentges & Sons, Inc. v. Mensing*, 777 N.W.2d 228, 230 (Minn. 2010); *Dolder v. Griffin*, 323 N.W.2d 773, 780 (Minn.1982).

In Minn.Stat. ch. 645 (2008), the legislature has provided the judiciary with canons of construction that govern the interpretation of the statutes of this state. *See* Minn.Stat. § 645.08. The goal of all statutory construction is to effectuate the intent of the legislature. Minn.Stat. § 645.16. In construing the language of a statute, we give words and phrases their plain and ordinary meaning. Minn.Stat. § 645.08; *Amaral v. Saint Cloud Hosp.*, 598 N.W.2d 379, 384 (Minn.1999). Thus, if the language of a statute is clear and free from ambiguity, our role is to enforce the language of the statute, and not explore the spirit or purpose of the law. Minn.Stat. § 645.16; *see also Peterson v. Halvorson*, 200 Minn. 253, 256, 273 N.W. 812, 813 (1937) (concluding that the court cannot ignore the plain language of a remedial statute in the guise of liberal construction).

■ When the language of a statute is unclear or ambiguous, we will go beyond the specific language of the statute to determine the intent of the legislature. Minn.Stat. § 645.16. A statute is unclear or ambiguous if it is susceptible to more than one reasonable interpretation. *Am. Family Ins. Group v. Schroedl*, 616 N.W.2d 273, 277 (Minn.2000). The legislature has set forth a non-exclusive list of factors the court should consider to determine legislative intent. Minn.Stat. § 645.16. Those factors allow us to consider, among other things, the purpose of the legislation. Minn.Stat. § 645.16(1)

(allowing consideration of "the occasion and necessity for the law"); Minn.Stat. § 645.16(4) (allowing consideration of "the object to be attained"). When the language of a mechanic's lien statute is unclear or ambiguous, we have liberally construed the statute in favor of the mechanic's lien claimant. *See Eischen Cabinet*, 683 N.W.2d at 816–18 (concluding that service of a mechanic's lien statement filed by certified mail pursuant to Minn.Stat. § 514.08, subd. 1 (2002), was effective upon mailing, not upon receipt); *Albert & Harlow, Inc. v. Great N. Oil Co.*, 283 Minn. 246, 250–51, 167 N.W.2d 500, 504 (1969) (construing the requirement that notice of a lien must be filed within 90 days of last material furnished to include material furnished in a different state).

■ We conclude that when the language of a mechanic's lien statute is unclear and ambiguous, it should be liberally construed in favor of a mechanic's lien claimant. This principle of statutory construction is predicated upon Minn.Stat. § 645.16, and our previous case law. Thus, the question we must consider is whether the language of Minn.Stat. § 514.09 is ambiguous.

*B. Section 514.09*

We turn to the language of the statute. Section 514.09[5] addresses multiple improvements to one or more adjoining lots and provides:

A lienholder who has contributed to the erection, alteration, removal, or repair of two or more buildings or other improvements situated upon or removed to one lot, or upon or to adjoining lots,

---

**5.** The predecessor to section 514.09 was enacted in 1889. Act of Apr. 24, 1889, ch. 200, § 7, 1889 Minn. Laws 313, 316. The language of section 514.09 and its predecessors has remained unchanged since 1905, except

for the substitution of gender-neutral language. *See* Minn.Stat. § 3512 (1905); Act of Mar. 25, 1986, ch. 444, § 4, subd. 1(n), 1986 Minn. Laws 775, 777.

under or pursuant to the purposes of one general contract with the owner, may file one statement for the entire claim, embracing the whole area so improved; or, if so electing, the lienholder may apportion the demand between the several improvements, and assert a lien for a proportionate part upon each, and upon the ground appurtenant to each, respectively.

Kuechle argues that section 514.09 is silent as to the manner of foreclosure, and therefore is ambiguous as to whether the lien claimant may foreclose on selected lots for the full amount of its lien. Kuechle argues that section 514.09 allows it to file a blanket lien against the entire project and then enforce the lien of $266,623 against the three model-home lots upon which it has first priority, for about $88,874 per lot. Premier Bank counters that a blanket lien must be enforced on a pro rata basis, for about $4,519 per lot.[6]

■■■ Section 514.09 provides for two types of liens for improvements that benefit adjoining lots. First, a mechanic's lien claimant has the option of filing one lien "for the entire claim" that "embrac[es] the whole area so improved." Minn.Stat. § 514.09. Under this option, the lien filed is a blanket lien for the entire claim covering all of the property subject to the lien. *Id.* Alternatively, a lien claimant may elect to file separate liens, "apportion the demand between the several improvements, and assert a lien for a proportionate part upon each." *Id.* The purpose of giving lien claimants a blanket lien option, provided the work is performed under one general contract, is to relieve lien claimants of the burden of keeping separate accounts and filing separate liens for each lot. *Johnson v. Salter,* 70 Minn. 146, 151,

72 N.W. 974, 975 (1897). By electing to file a blanket lien, a lien claimant is relieved of the burden of proving the specific amount attributable to each improvement.

■■■ We agree that section 514.09 does not address the manner of foreclosing a blanket lien. But silence in a statute regarding a particular topic does not render the statute unclear or ambiguous unless the statute is susceptible of more than one reasonable interpretation. Put differently, we must resolve whether the statutory construction issue here involves a failure of expression or an ambiguity of expression. *See Genin v. 1996 Mercury Marquis,* 622 N.W.2d 114, 117 (Minn. 2001); *see also Wallace v. Comm'r of Taxation,* 289 Minn. 220, 230, 184 N.W.2d 588, 594 (1971). If the legislature fails to address a particular topic, our rules of construction "forbid adding words or meaning to a statute" that are purposely omitted or inadvertently overlooked. *Genin,* 622 N.W.2d at 117. But if the silence causes an ambiguity of expression resulting in more than one reasonable interpretation of the statute, then we may go outside the language of the statute to determine legislative intent. *Beardsley v. Garcia,* 753 N.W.2d 735, 737 (Minn.2008).

Kuechle's argument that a lien claimant is entitled to foreclose a blanket lien against less than all of the property subject to the lien improperly conflates the substance of a blanket lien and the manner of foreclosure. The substance of a blanket lien created under section 514.09 and a determination of how a lien may be foreclosed are separate but related topics that require different analyses.

■■■ We first examine the substance of a blanket lien. When a lien

---

**6.** The total amount of improvements was $1,083,731 spread over 59 lots, for about $18,368 per lot, of which $817,108 was paid, leaving $266,623 unpaid, for about $4,519 per lot.

claimant elects to file a blanket lien, the type of lien created is one lien "for the entire claim" that "embrac[es] the whole area so improved." Minn.Stat. § 514.09. A blanket lien is one lien, and not separate liens for each lot. *Id.* Moreover, the blanket lien is for "the entire claim." *Id.* Thus, a blanket lien is for the entire amount of the lien against the whole area improved. If a lien claimant desires to file separate liens with proportionate amounts attributable to each lot, it has the option to do so under the statute. *Id.* Under this option, the lien claimant has the burden of proving the specific amount attributable to each lot. *See Johnson*, 70 Minn. at 151, 72 N.W. at 975.

■ Section 514.09 does not specifically address how a blanket lien is to be enforced, but this does not render the statute unclear or ambiguous. The manner in which a mechanic's lien may be foreclosed is described in Minn.Stat. § 514.10 (2008), which sets forth the legal procedures that must be followed. Section 514.10 provides that a mechanic's lien "may be enforced by action in the district court of the county in which the improved premises ... are situated ... and conducted in the same manner as actions for the foreclosure of mortgages upon real estate, except as herein otherwise provided." Section 514.10 governs the foreclosure procedure for all types of mechanic's liens created under Minn.Stat. ch. 514. Thus, a blanket lien created under section 514.09 is foreclosed in accordance with the proce-

dure set forth in section 514.10 just like any other lien created under chapter 514.

We conclude that a blanket lien must be enforced as one lien against the whole area improved for the entire amount of the lien. Although Kuechle argues that section 514.09 "does not impose limitations on a contractor's ability to [choose] between a blanket lien or apportionment," Kuechle is asking for a right that is not provided by section 514.09—the right to elect to file a blanket lien against the whole project for the entire amount of the lien and then to essentially change that election by enforcing separate liens with different values against each lot in the project.[7] We cannot read such a right into the statute. *See Greene v. Comm'r of Minn. Dep't of Human Servs.*, 755 N.W.2d 713, 722 (Minn. 2008) (noting that it is not the "proper function" of the judiciary to add "a right into the statute"); *M.E. Kraft Excavating & Grading Co. v. Barac Constr. Co.*, 279 Minn. 278, 283, 156 N.W.2d 748, 751 (1968) (explaining that mechanic's liens are "purely creatures of statutes and the rights of the parties are governed by the language of the statutes"). Rather, a plain reading of the statute supports the conclusion that the legislature intended that a blanket lien created under section 514.09 be spread pro rata against the whole area improved.

Kuechle urges us to apply equitable principles to protect the value of its work. *See Northland Pine Co. v. Melin Bros.*, 136 Minn. 236, 237, 161 N.W. 407, 408 (1917). But we cannot under the guise of

---

7. We observe that the Uniform Construction Lien Act expressly allows a lien claimant to foreclose on less than the whole area improved by a blanket lien. It provides:

   If a recorded notice of commencement covers more than one lot in a platted subdivision of record, a claimant may apportion the claimant's construction lien to the various lots covered by the notice of com-

mencement *in any proportion* the claimant chooses and states in the claimant's recorded construction lien and may assign all of the lien to a particular lot.

Unif. Constr. Lien Act § 203(d) (1987) (emphasis added). The legislature has not amended section 514.09 to incorporate that type of foreclosure.

equity allow a lien claimant who has elected to file a blanket lien for an improvement that benefits an entire development and who rejected the option of filing separate, proportionate liens for each lot in the development, to enforce a blanket lien in a manner that results in a disproportionate burden on a small fraction of the lots subject to the lien and benefited by the improvement. Therefore, we conclude that when a blanket lien is filed, the value of the lien is spread pro rata against the whole area improved.

Kuechle relies on *Reilly v. Williams*, 47 Minn. 590, 594, 50 N.W. 826, 827 (1891), to argue that a lien claimant may foreclose the full amount of its blanket lien against less than all of the property improved.[8] In *Reilly*, the lien claimant furnished labor and materials for the construction of two houses on contiguous lots pursuant to one general contract. *Id.* at 591–92, 50 N.W. at 826. When the first house was completed, the lien claimant was paid and agreed to release the first lot, but retained his lien rights on the second lot for the contract balance. *Id.* at 592, 50 N.W. at 826. When the balance of the contract was not paid, the lien claimant filed a lien against the second lot. *Id.* at 592, 50 N.W. at 826. The owner refused to pay on the ground that the release of one lot operated to release both lots. *Id.* at 593, 50 N.W. at 827. We rejected the owner's argument and allowed the lien claimant to foreclose his lien. *Id.* at 594, 50 N.W. at 827. *Reilly* does not address the question of statutory construction before us.

Kuechle also argues that Minn. Stat. § 580.08 (2008), applies to blanket mechanic's liens, and mandates foreclosure against less than all of the property subject to the lien. Section 580.08 provides that "[i]f the mortgaged premises consist of separate and distinct … tracts, they shall be sold separately, and no more … tracts shall be sold than are necessary to satisfy the amount due on such mortgage." Kuechle's argument is unpersuasive. Minnesota Statutes § 514.10 provides that "liens may be enforced by action in the district court" and are "conducted in the same manner as actions for the foreclosure of mortgages." The procedure to foreclose a mortgage by action is set forth in Minn.Stat. ch. 581 (2008), not Minn.Stat. ch. 580 (2008). Chapter 580 governs mortgage foreclosure by advertisement, which is a non-court proceeding, and therefore not applicable. Section 580.08 is only "incorporated" into foreclosures by action inasmuch as it relates to the "form of the certificate of sale."[9] Minn.Stat. § 581.02 (2008) (stating that "[t]he provisions of section[ ] 580.08 … so far as [it] relate[s] to the form of the certificate of sale, shall apply to and govern the foreclosure of mortgages by action"). Further, the connection between the mechanic's lien statute and chapter 580, governing foreclosures by advertisement, is tenuous at best. It simply does not follow that a requirement of section 580.08 "explicitly forbids apportionment" in a pro rata manner under section 514.09.

In summary, when a lien claimant elects to file a blanket lien pursuant to section 514.09, one lien is created which encum-

---

**8.** Premier Bank relies on two cases to argue that a lien claimant must foreclose a blanket lien on a pro-rata basis. *See Albert & Harlow, Inc. v. Great N. Oil Co.*, 283 Minn. at 253, 167 N.W.2d at 506; *Carr–Cullen Co. v. Cooper*, 144 Minn. 380, 386, 175 N.W. 696, 699 (1920). But neither case considered or re-

solved the statutory interpretation question before us.

**9.** A "certificate of sale" is the "document reflecting a successful bid for property at a judicial sale." *Black's Law Dictionary* 240 (8th ed. 1999).

bers the whole area improved, and the amount of the lien is spread pro rata against each lot subject to the lien. A blanket lien created under section 514.09 must be enforced as one lien against the whole area improved for the entire amount of the lien. As a result, Kuechle's lien for the model-home lots is limited to the pro rata amount of the lien, or a fifty-ninth of the entire amount, per lot.

Reversed and remanded.

STRAS, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.