Harold YOUNG, Appellant,

v.

Lucinda JESSON, Commissioner of
Human Services, Respondent,

Steele County Human Services,
Respondent.

No. A10–1303.

Court of Appeals of Minnesota.

April 12, 2011.

Charles H. Thomas, Southern Minnesota Regional Legal Services, Inc., Mankato, MN, for appellant.

Lori Swanson, Attorney General, Barry Greller, Assistant Attorney General, St. Paul, MN, for respondent Commissioner.

Daniel A. McIntosh, Steele County Attorney, Owatonna, MN, for respondent Steele County.

Considered and decided by PETERSON, Presiding Judge; TOUSSAINT, Judge; and HUDSON, Judge.

## OPINION

HUDSON, Judge.

Appellant, a recipient of home- and community-based services under Minnesota's elderly-waiver medical-assistance program pursuant to section 1915(c) of the Social Security Act, challenges the decision of respondent Minnesota Commissioner of Human Services affirming a decision by respondent Steele County Board of Commissioners to refuse to contract with appellant's chosen provider for those services. Because we conclude that the commissioner erred by determining that the county had authority to restrict appellant's free choice of providers by declining to contract with a provider otherwise qualified to render services to appellant, we reverse and remand for further proceedings.

## FACTS

In 2007, the Steele County Board of Commissioners (county) contracted with Valleyview of Owatonna, LLC, (Valleyview), an assisted-living and memory-care facility, to purchase customized-living services under the Minnesota elderly-waiver program. This program is a home- and community-based-services program operating under a waiver to Minnesota's medical-assistance plan, as authorized by section 1915(c) of the Social Security Act. 42 U.S.C. § 1396n(c). The elderly-waiver program serves persons age 65 or older who would otherwise be eligible to receive Medicaid benefits in a traditional institution and allows them instead to obtain care in their homes or in community-based residences.

Minnesota operates approved medical-assistance waiver programs under both sections 1915(b) and 1915(c) of the Social Security Act. *See* 42 U.S.C. § 1396n(b)(1), (c)(1). Section 1915(b) relates to the provision of services for recipients who are enrolled in managed-care organizations. 42 U.S.C. § 1396n(b)(1). Section 1915(c) allows for home- and community-based alternatives to nursing-facility care for individuals who are not enrolled in managed-care organizations. *See* 42 U.S.C. § 1396n(c)(1).

Appellant Harold Young, who is 80 years old and has Alzheimer's disease, was placed in the memory-care unit at Valleyview and began receiving customized-living services through the elderly-waiver program in June 2008. Less than two weeks after Young's admission to Valleyview, however, Steele County Human Services informed Young's daughter, who is now his guardian, that the county had voted to terminate its contract with Valleyview and would no longer permit the use of elderly-waiver funds to cover services at Valleyview after June 30.

Appellant sought a hearing with the Minnesota Department of Human Services (DHS) pursuant to Minn.Stat. § 256.045, subds. 3(1), 6 (2008), challenging the county's action. In October 2008, before a hearing could be held, it was discovered that appellant was enrolled in a multi-county managed-care plan, which had a contract with DHS and the county to provide medical-assistance benefits, including elderly-waiver services, to enrolled participants. When it became apparent that this managed-care plan would pay for appellant's elderly-waiver services at Valleyview retroactive to July 1, 2008, the human-services judge dismissed appellant's appeal.

For reasons not in the record, appellant later became ineligible for the managed-care plan. As a result, in December 2008, the county issued another notice, stating that it would deny appellant elderly-waiver services effective January 1, 2009, because appellant was no longer receiving care

through a managed-care plan. Therefore, he would be receiving services on a fee-for-service basis, and because the county did not have a contract with Valleyview to provide elderly-waiver services for appellant, he would need to move to another facility. Appellant appealed the county's decision to DHS, arguing that the county's decision abridged his right to free choice among qualified medical-assistance providers in violation of 42 U.S.C. § 1396a(a)(23)(A) (2006).

At an evidentiary hearing before a human-services judge, appellant's daughter testified that she wanted appellant to remain at Valleyview, which was providing appropriate care and was located close to her home and appellant's physician. She testified that three of the five alternate facilities the county offered for appellant's care were located outside of Steele County.

The Steele County social-services supervisor testified that, to her knowledge, Valleyview was licensed by the Minnesota Department of Health (DOH) and appeared on the DHS website as a qualified provider of services for appellant. She testified that, although the DOH had notified the county about certain health and safety issues at Valleyview, she was not aware if those issues had adversely affected Valleyview's license. She testified that one factor in the county's decision to terminate Valleyview's contract was the county's financial liability in assuming case-management services for people from another county who would be using Valleyview's services. She did not know about other possible reasons for the termination.

The Steele County human-services director testified that, prior to Valleyview's opening, the county received a list of health-and-safety-related concerns, which

had delayed the opening, but the county had nonetheless decided to contract with Valleyview for a period of time. He testified that DHS has delegated responsibility for oversight of the elderly-waiver program to the county; that even if a provider is a "qualified provider" as licensed by the department of health, the county had no duty to contract with that provider; that Valleyview no longer had a contract with the county; and that appellant's free choice could be exercised by staying at a facility with which the county contracted.

The DHS aging-and-adult-services manager testified that Minnesota's elderly-waiver application did not authorize the county to refuse to contract with a vendor who is otherwise qualified and meets the needs of a recipient. She agreed that appellant's situation was a novel one and that it was ultimately the state's responsibility to ensure that the elderly-waiver program was operated in compliance with federal law. She testified that DHS was not taking a position on whether appellant had free choice of providers.

The human-services judge issued findings of fact, conclusions of law, and an order, concluding that a qualified provider was a provider that had a contract with a lead agency, such as the county; that Valleyview was not a qualified provider because it did not have a contract with the county; and that appellant has free choice of qualified providers because he could stay at any other facility with which the county *did* have a contract. The commissioner issued a decision adopting the findings, conclusion, and order. Appellant appealed to the district court, which affirmed the commissioner's determination, and this appeal follows.[1]

---

1. The commissioner did not submit a brief and informed this court that it was an inac-    tive party to this appeal.

## ISSUES

I. Does the commissioner have authority to review the county's action of declining to contract with Valleyview?

II. Is the commissioner's decision that the county had the authority to decline to provide elderly-waiver services to appellant at Valleyview arbitrary and capricious or affected by legal error?

## ANALYSIS

### I

■ As a preliminary matter, the county contends that the commissioner lacked authority to review its decision to terminate its contract with Valleyview for elderly-waiver services because the county was not acting as a "county agency" in making its contracting decision. Whether a state agency's decision exceeded its authority presents a question of law, which this court reviews de novo. *St. Otto's Home v. Minn. Dep't of Human Servs.*, 437 N.W.2d 35, 39–40 (Minn.1989). The commissioner's authority to review the county's decision is controlled by statute. We review questions of statutory interpretation de novo. *Martin ex rel. Hoff v. City of Rochester*, 642 N.W.2d 1, 9 (Minn.2002).

Minnesota law provides that the commissioner "may initiate a review of any action or decision of a county agency." Minn.Stat. § 256.045, subd. 6(a) (2010). But the county argues that the county board of commissioners is the body that decides whether to offer a contract to a provider. And the county maintains that because the statutory term "county agency" does not refer to the county board, but rather to Steele County Human Services, the county board's contractual decisions are not subject to review by the commissioner.

We reject this argument. The Minnesota legislature has granted the commission-

er specific powers to carry out designated duties to "[a]dminister and supervise all forms of public assistance provided for by state law"; to "monitor ... the performance of county agencies in the operation and administration of human services"; and to "enforce compliance with statutes, rules, federal laws, regulations, and policies governing welfare services." Minn. Stat. § 256.01, subd. 2(a), 2(a)(2) (2010). Therefore, the commissioner's authority extends broadly to govern the administration of the elderly-waiver program, including the process of contracting for those services.

■ We also note that appellant has the right to a state-agency hearing on the change in his receipt of benefits. *See* Minn.Stat. § 256.045, subd. 3(a)(1) (2010) (stating that right to appeal extends to "any person" whose "public assistance, medical care, or ... social services granted by the state agency or a county agency ... is suspended, reduced, [or] terminated"). Within this context, "[t]he term 'agency' includes the county human services agency ... and, where applicable, any entity involved under a contract ... with the state agency or with a county agency" providing or operating services or programs affected by this right to appeal. Minn.Stat. § 256.0451, subd. 1 (2010). Here, the county's own former contract with Valleyview states that the county board of commissioners, "through [its] Human Services Department" is entering into the contract for elderly-waiver services. Therefore, we conclude that the county has acted as a "county agency" in purchasing elderly-waiver services, and the commissioner had authority to review the county's decision not to contract with Valleyview for those services.

### II

Appellant argues that the commissioner legally erred by determining that appel-

lant's "free choice" of Medicaid providers was limited to those providers with whom the county chose to contract. "On appeal from the district court's appellate review of an administrative agency's decision, this court does not defer to the district court's review, but instead independently examines the agency's record and determines the propriety of the agency's decision." *Shagalow v. State, Dep't of Human Servs.,* 725 N.W.2d 380, 384 (Minn.App.2006) (quotation omitted), *review denied* (Minn. Feb. 28, 2007). This court may reverse or modify an agency's decision on appeal if it determines that a party's substantial rights have been prejudiced because the agency decision violated a constitutional provision, exceeded the agency's authority, was made through unlawful procedure, was unsupported by substantial evidence, was arbitrary or capricious, or was affected by an error of law. Minn.Stat. § 14.69 (2010).

Our review of this issue requires examination of the relevant federal statutory and regulatory framework and Minnesota law implementing that framework. Statutory and regulatory construction presents a legal issue, which we review de novo. *Martin,* 642 N.W.2d at 9.

When interpreting a statute or rule, we first examine whether the language is clear or ambiguous on its face. *Am. Fam. Ins. Group v. Schroedl,* 616 N.W.2d 273, 277 (Minn.2000); *see also* Minn.Stat. § 645.001 (2010) (stating that principles of statutory interpretation apply to rules). If the language of a statute is clear, this court uses its plain language to ascertain and effectuate the intention of the legislature. Minn.Stat. § 645.16 (2010); *Brua v. Minn. Joint Underwriting Ass'n,* 778 N.W.2d 294, 300 (Minn.2010). But if the language is ambiguous, or reasonably susceptible to more than one interpretation, we apply the canons of statutory construc-

tion. *Premier Bank v. Becker Dev., LLC,* 785 N.W.2d 753, 759 (Minn.2010); *Brayton v. Pawlenty,* 781 N.W.2d 357, 363 (Minn. 2010). "We are to read and construe a statute as a whole and must interpret each section in light of the surrounding sections." *Schroedl,* 616 N.W.2d at 277.

The federal Medicaid program "is jointly funded with the states as a 'cooperative endeavor in which the [f]ederal [g]overnment provides financial assistance to participating [s]tates to aid them in furnishing health care to needy persons.'" *In re Estate of Barg,* 752 N.W.2d 52, 58 (Minn. 2008) (quoting *Harris v. McRae,* 448 U.S. 297, 308, 100 S.Ct. 2671, 2683, 65 L.Ed.2d 784 (1980)). A state participating in Medicaid must enact legislation and rules, incorporate them into a medical-assistance plan, and submit the plan for approval by the United States Secretary of Health and Human Services. *Id.* at 58. "Congress ... requires that a participating state's Medicaid plan conform to federal requirements." *Martin,* 642 N.W.2d at 11.

Home- and community-based waiver programs, such as Minnesota's elderly-waiver program, allow persons who would otherwise be eligible to receive Medicaid benefits in a traditional institution to instead obtain care in their homes or in community-based residences. *Ball v. Rodgers,* 492 F.3d 1094, 1098 (9th Cir. 2007). In order to operate a waiver program, a state must submit for federal approval a waiver request that includes criteria for service definitions and provider standards. *See* 42 C.F.R. § 431.55 (2010).

■ The free-choice provision of the federal Medicaid statute—which is at the heart of this dispute—requires that a state medical-assistance plan allow a Medicaid recipient to have "free choice" in obtaining services from a qualified provider who is willing to provide those services. 42 U.S.C. § 1396a(a)(23)(A); 42 C.F.R.

§ 431.51(b) (2010). "By implication, [this statute] confers an absolute right to be free from government interference with the choice to remain in a home that continues to be qualified." *O'Bannon v. Town Court Nursing Ctr.*, 447 U.S. 773, 785, 100 S.Ct. 2467, 2475, 65 L.Ed.2d 506 (1980); *see also Ball*, 492 F.3d at 1098 (concluding that Medicaid beneficiaries may enforce free-choice provisions by way of section–1983 action); *Harris v. Olszewski*, 442 F.3d 456, 461 (6th Cir.2006) (stating same).

The parties dispute whether Valleyview is a "qualified provider" under the Social Security Act. That act states that a Medicaid recipient may obtain medical services and care from "any institution, agency, community pharmacy, or person, qualified to perform the service or services required." 42 U.S.C. § 1396a(a)(23)(A). The commissioner determined that a qualified provider "must ... have a contract with a county," that appellant had "free choice" of qualified providers, but that because the county no longer had a contract with Valleyview, Valleyview was not a qualified provider for appellant's care. Appellant argues that the commissioner legally erred by determining that appellant's "free choice" of providers was restricted to those providers with whom the county chose to contract. Instead, appellant argues that a "qualified provider" is any provider that is properly licensed by the state and is capable of providing the requisite care.

*Regulatory standards*

To review the commissioner's decision, we turn first to the regulatory framework governing Medicaid waivered services. Federal regulations provide that, in general, a Medicaid recipient may obtain services from any "organization that is ... [q]ualified to furnish the services; and ... [w]illing to furnish them to that particular recipient." 42 C.F.R. 431.51(b)(i)–(ii)

(2010). A state agency may, however, "[set] reasonable standards relating to the qualifications of providers." 42 C.F.R. § 431.51(c)(2) (2010). The county argues that the requirement that a provider hold a contract with a county is a "reasonable standard" that relates to a provider's qualifications.

To address this argument, we must determine what "reasonable standard[s]" the state has set for the elderly-waiver program. A state must set out standards for providers when it requests federal approval of its waiver request. 42 C.F.R. § 431.55(f) (2010); *see* 42 C.F.R. § 431.55(f)(1) (stating that a state's waiver may restrict participants "to obtaining services from (or through) qualified providers ... that meet, accept, and comply with the State reimbursement, quality and utilization standards specified in the State's waiver request"); Minn.Stat. § 256B.0915, subd. 1 (2010) (stating that "[t]he provision of waivered services to elderly and disabled medical assistance recipients must comply with the criteria for service definitions and provider standards approved in [Minnesota's] waiver"). Therefore, we examine the terms of Minnesota's elderly-waiver application to determine whether a "qualified provider" is, by definition, a provider that holds a contract with the county. *See Shagalow*, 725 N.W.2d at 385–86 (interpreting terms of waiver to assist in determining issue of whether medical-assistance funds may be used to pay for service outside of United States).

Minnesota's elderly-waiver application contains no language that allows a restriction of providers based on a county agency's decision not to execute a contract with a certain provider. The elderly-waiver application provides that it is based on a quality framework, with a participant-based mission. Application for a § 1915(c) HCBS Waiver 1 (July 1, 2008). It states

that providers must maintain applicable state licenses and certifications. *Id.* at 7. Although the application allows the state to delegate certain waiver-administration tasks to county agencies, it expressly reiterates a recipient's free choice of qualified providers. *See id.* at 4, 9 (stating that "[i]n accordance with 42 C.F.R. § 431.51, a participant may select any willing and qualified provider to furnish waiver services"). Moreover, maintaining a recipient's free choice is a requirement for Minnesota's participation in the waiver program. *See Martin,* 642 N.W.2d at 11 (stating "that a participating state's Medicaid plan [must] conform to federal requirements").

We also note that federal approval of Minnesota's elderly-waiver application is now conditioned on meeting standards specified in a designated elderly-waiver-service-provider contract template. State of Minnesota, DHS Bull. No. 9–25–03, DHS Issues Template for contracts with Elderly Waiver and Alternative Care providers 2 (Apr. 20, 2009); *see Shagalow,* 725 N.W.2d at 386–87 (interpreting written policy changes implemented by federal agency that administers Medicaid). The state bulletin indicates that the template was issued as a result of federal-agency "concern regarding the assurance of provider access for all qualified providers and the related concern of access and choice for waiver participants." DHS Bull. at 2. It further states that, although a waiver-services contract must contain information on required standards and licenses, "[t]he parameters of the contract cannot be altered in any way that would exclude otherwise qualified providers or restrict or create lack of choice for consumers among qualified providers." *Id.* at 3.

■ Taken together, the federal statutes and regulations, waiver application, and state bulletin indicate that a waiver

recipient must be accorded a free choice of qualified providers. *See Occhino v. Grover,* 640 N.W.2d 357, 359 (Minn.App.2002) (stating that statutes must be construed in whole-act context), *review denied* (Minn. May 28, 2002). We recognize that the federal regulations allow a state, in its waiver request, to specify "reimbursement, quality and utilization standards" for providers and to restrict waiver participants "to obtaining services from ... qualified providers ... that meet, accept and comply" with those standards. 42 C.F.R. § 431.55(f)(1). But the county does not assert how the decision to terminate its contract with Valleyview directly relates to reimbursement, quality, or utilization standards. Therefore, we conclude that the applicable regulatory framework does not support the commissioner's decision that Valleyview was not a qualified provider of elderly-waiver services because it did not have a contract with the county.

### State statutes

Notwithstanding the absence of language in the waiver application authorizing the county to restrict providers by declining to contract with them, the county argues that the commissioner's decision is supported by two Minnesota statutes: Minn.Stat. § 256B.0915 (2010), which governs the provision of elderly-waiver services, and Minn.Stat. § 256.0112 (2010), which provides general authority for a county to contract with vendors to provide community social services. We will address each statute in turn.

### Minn.Stat. § 256B.0915

■ The commissioner determined that Valleyview did not meet the standards of a qualified provider because it did not have a contract with the county based, in part, on the application of Minn.Stat. § 256B.0915, subd. 1b, which provides that counties may operate as "[l]ead agencies" in authorizing

certain elderly-waiver services. Minn. Stat. § 256B.0915, subd. 1b(5). But by its terms, subdivision 1b relates only to the provision of "case management services," which is the coordination of community services, financial management, and maintenance of individual case records for elderly-waiver recipients. *Id.*, subd. 1b. The county acts as the lead agency in providing case-management services for appellant, but the provision of those services is not at issue here, and the county has failed to show that subdivision 1b otherwise addresses the issues on appeal. Therefore, to the extent that the commissioner referred to the case-management subdivision of Minn.Stat. § 256B.0915, the commissioner erred by doing so.

Other subdivisions of Minn.Stat. § 256B.0915 govern customized-living services, which Valleyview has been providing to appellant. The county argues that the commissioner's determination is supported by subdivisions relating to customized-living-services rates and negotiation of individual-service rates. Minn.Stat. § 256B.0915, subds. 3e, 3f. The county notes that payment for customized-living services, including service rates, must be *"authorized"* by a lead agency. Minn. Stat. § 256B.0915, subd. 3e [2] (emphasis added). In addition, "[p]ersons or agencies must be employed by or *under a contract* with the lead agency ... in order to receive funding under the elderly waiver program, except as a provider of supplies and equipment when the monthly cost of the supplies and equipment is less than $250." Minn.Stat. § 256B.0915, subd. 3f (emphasis added). The county maintains that these subdivisions, which require that

in order to obtain elderly-waiver funding, a contract must exist between a county and a service provider, show that a county has broad discretion in its decision to contract with providers.

When subdivisions 3e and 3f are read in the context of the statute as a whole, it is apparent that those subdivisions refer only to the procedures which must be followed in contracting for customized-living services, not to the determination of which providers are qualified to furnish those services. *See Schroedl,* 616 N.W.2d at 277 (stating that reviewing court is to read and construe statute as a whole). Moreover, other statutory provisions emphasize the significance of a recipient's "free choice" of qualified providers. First, "[s]ervices and supports shall meet the requirements set out in United States Code, title 42, section 1396n." Minn.Stat. § 256B.0915, subd. 8(a). Those requirements include "free choice" of qualified providers. *See* 42 U.S.C. § 1396n(c)(2)(C) (requiring recipient to be informed of and given choice of feasible alternatives to institutional care). In addition, "[s]ervices and supports shall promote consumer choice." Minn.Stat. § 256B.0915, subd. 8(b). Finally, we note that DHS, not the county, establishes the parameters for customized-living service rates. *See* Minn.Stat. § 256B.0915, subd. 3e(a) (providing that the monthly rate for customized-living services "shall be ... authorized by the lead agency *within the parameters established by the commissioner* ") (emphasis added). Thus, we conclude that Minn.Stat. § 256B.0915 does not support the commissioner's determination that, in order to be considered a qualified

**2.** In 2009, the Minnesota legislature amended portions of Minn.Stat. § 256B.0915. 2009 Minn. Laws, ch. 79, art. 8, §§ 45–49, at 910–14. The previous version of Minn.Stat. § 256B.0915, subd. 3e, stated a requirement that contracts be "negotiated and authorized" by a lead agency. *See* Minn.Stat. § 256B.0915, subd. 3e (2008). Because we would reach the same result under either version of the statute, we apply the current version.

provider of elderly-waiver services, a provider must have an existing contract with a lead agency.

*Minn.Stat. § 256.0112*

■ The county also argues that Minn. Stat. § 256.0112 supports the commissioner's conclusion that "there is no provision of Minnesota law which could force the [county] to execute a contract with a vendor." A county is authorized to contract with vendors to provide community social services and must follow certain procedures and standards for purchasing those services. Minn.Stat. § 256.0112, subds. 1, 2. If an inquiring agency wishes to purchase services from a vendor located in a different county, it must notify the local agency in that county. Minn.Stat. § 256.0112, subd. 6(c).

> If the local agency in the county where the vendor is located declines to negotiate a contract with [a] vendor or fails to [timely] respond [to a request to purchase services], under paragraph (c), the inquiring agency is authorized to negotiate a contract and must notify the local agency that declined or failed to respond.

Minn.Stat. § 256.0112, subd. 6(d). The commissioner stated that, under subdivision 6(d), the local agency may decline to negotiate a contract with a local vendor and reasoned that the county therefore may not be forced to contract with Valleyview.

But subdivision 6(d) must be read in conjunction with subdivision 6(c), which addresses the situation in which a county seeks to negotiate with a vendor located in a different county. Subdivision 6(d) does not come into play until a local agency requests to purchase services from an out-of-county vendor under subdivision 6(c). It is not relevant to the present issue because Valleyview is located in Steele County. In addition, when read together,

the language of subdivisions 6(d) and 6(c) indicates that a local agency's decision to "decline[ ] to negotiate a contract with [a] vendor" refers to the decision "not [to] negotiate a contract with [that] vendor because of concerns related to clients' health and safety." Minn.Stat. § 256.0112, subds. 6(d), 6(c)(3). The statute does not provide unlimited discretion for a county to refuse to contract with an otherwise-qualified provider. *See Premier Bank,* 785 N.W.2d at 760 (a court cannot supply a statutory provision that the legislature "purposely omitted or inadvertently overlooked").

■ Here, the commissioner found that the county articulated health and safety concerns with respect to contracting with Valleyview for elderly-waiver services. But although the Steele County human-services director testified that health and safety concerns originally delayed Valleyview's opening, and that it was one among several issues considered by the county in its initial contracting decision, the county has presented no evidence that these concerns were ongoing. In fact, the county did contract with Valleyview for a period of time. Therefore, substantial evidence does not support a finding that these concerns currently justify the county's decision not to contract with Valleyview. The terms of the county's previous contract with Valleyview required that, as a provider, Valleyview must continue to comply with relevant standards of licensure and certification to meet the standards of the elderly-waiver program, and there is no evidence that Valleyview does not currently comply with those requirements. Therefore, we conclude that the commissioner legally erred by determining that the county had authority to decline to contract with Valleyview as a qualified provider of appellant's elderly-waiver services and that the county acted arbitrarily and capriciously by denying appellant his "free

choice" of qualified providers of elderly-waiver services.

## DECISION

We conclude that the commissioner had authority to review the county's authority to restrict an elderly-waiver client's "free choice" of providers. But we also conclude that the commissioner legally erred by determining that the county had authority to restrict appellant's "free choice" of qualified providers by terminating its contract with appellant's chosen provider, absent evidence that this provider was not properly licensed or otherwise unqualified to provide appellant's care. Because the commissioner's decision was affected by legal error, we reverse and remand to the district court for an order requiring the county to execute a contract with appellant's chosen qualified provider.

**Reversed and remanded.**