**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A15-0775**

Meleyco Partnership No. 2,
Appellant,

vs.

City of West St. Paul,
Respondent.

**Filed January 25, 2016**
**Reversed**
**Randall, Judge**[*]

Dakota County District Court
File No. 19HA-CV-14-3857

Thomas H. Boyd, Tammera R. Diehm, Winthrop & Weinstine, P.A., Minneapolis, Minnesota (for appellant)

Jason J. Kuboushek, Nathan C. Midolo, Iverson Reuvers Condon, Bloomington, Minnesota (for respondent)

Considered and decided by Schellhas, Presiding Judge; Cleary, Chief Judge; and Randall, Judge.

## S Y L L A B U S

For a nonconforming use to lose its legal status, the discontinuance of the nonconforming use must be attributable, at least in part, to the property owner.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**O P I N I O N**

**RANDALL**, Judge

On appeal from summary judgment, appellant Meleyco Partnership No. 2 argues that the district court erred in (1) applying West St. Paul, Minn., Zoning Ordinance (WSPZO) § 37.2(1) (2012) to appellant's legally nonconforming sign, (2) concluding that tenant Pawn America's change of use of the property triggered the discontinuance of the sign under WSPZO § 37.7(1)(a)(v) (2012), and (3) concluding that appellant failed to rebut the presumption that appellant abandoned the legally nonconforming sign. We reverse.

**FACTS**

In this zoning dispute, appellant owns the real property located at 1399 Robert Street South in West St. Paul. In 1971, appellant had a pylon sign lawfully erected on the property. On October 22, 1997, appellant entered into a lease with Pawn America, which gave Pawn America the right to use the property and pylon sign through April 30, 2014. After that time, the city enacted an ordinance restricting the use of pylon signs. The parties agree that because the pylon sign was in use when the city enacted the ordinance, its use constituted a legal, nonconforming use.

In November 2012, Pawn America notified appellant that it decided to relocate its retail pawn operations to another property in West St. Paul. Pawn America ceased retail pawn operations at the property on November 14, 2012, but it continued to use the property for storage and other business-related purposes. It continued these activities and performed all of its obligations under the lease through the end of the lease term, April 30, 2014. In April 2013, Pawn America covered the pylon sign, effectively making it blank. During the

2

same timeframe, appellant began preparations for the end of Pawn America's lease by directing Colliers International-Welsh (Welsh), a commercial real estate company, to create marketing materials to attract a new tenant.

On February 7, 2014, the city's zoning administrator, Benjamin Boike, sent appellant a letter stating that "[t]he sign is considered abandoned since the property has been vacant for more than 1 year" and directing appellant to remove the sign. After multiple pieces of correspondence between appellant and the zoning administrator, the zoning administrator confirmed the decision that the sign was deemed abandoned and needed to be removed. Appellant appealed the zoning administrator's decision to the city's committee of adjustments.

The committee of adjustments met and heard the parties' arguments concerning the pylon sign.[1] The committee of adjustments upheld the zoning administrator's decision. In doing so, the committee concluded: (1) "The cessation of operations by Pawn America constituted a discontinuation of the use of the Sign as of November 2012[,]" (2) "Discontinuance of the use [of] the Sign for more than one year is presumed to be abandonment of the use of the Sign[,]" (3) "Abandonment of the sign occurred in November 2013[,]" and (4) "The Owner failed to rebut the presumption that the use was abandoned." Appellant appealed to the city council.

---

[1] There were multiple instances where committee members were confused about the identity of the appellant. Committee members seemed to believe that appellant and Pawn America were the same entity, or at least related more closely than landlord-tenant.

3

The city council met and heard the parties' arguments. The city council upheld the committee of adjustments' decision. The city council stated: "Because there was no business operating at the Property for a period of more than one year, the Sign meets the definition of an Abandoned Sign pursuant to the Zoning Ordinance." The city council also concluded that appellant "failed to rebut the presumption of abandonment."

Appellant brought an action for declaratory judgment and a petition for writ of prohibition. The parties brought cross-motions for summary judgment, and the district court entered judgment in favor of the city. This appeal followed.

## ISSUE

Did the district court err in concluding that tenant Pawn America's cessation of retail activities triggered the discontinuance of appellant property owner's use of the sign under WSPZO § 37.7(1)(a)(v)?

## ANALYSIS

On appeal from summary judgment, we consider whether there are any genuine issues of material fact and whether the district court erred in applying the law. *Taylor v. LSI Corp. of Am.*, 796 N.W.2d 153, 155 (Minn. 2011). Because there are no disputed material facts here, the issue before us is one of statutory construction, which is a question of law we review de novo. *Krummenacher v. City of Minnetonka*, 783 N.W.2d 721, 726 (Minn. 2010). In reviewing whether the district court correctly interpreted the ordinance, we give only slight consideration to the interpretation by the municipal government. *R.L. Hexum & Assocs., Inc. v. Rochester Twp., Bd. of Supervisors*, 609 N.W.2d 271, 274 (Minn. App. 2000).

4

The city argues that we should review the city council's decision merely for reasonableness. The city cites numerous cases in support of this position, most of them concerning discretionary decisions by a municipality. *See Swanson v. City of Bloomington*, 421 N.W.2d 307, 314 (Minn. 1988) (reviewing factual determinations by municipality); *Honn v. City of Coon Rapids*, 313 N.W.2d 409, 416-17 (Minn. 1981) (reviewing quasi-legislative decision of municipality). But the Minnesota Supreme Court has previously distinguished between issues of fact, legislative policy-making questions, and interpretations of existing ordinances. *Frank's Nursery Sales, Inc. v. City of Roseville*, 295 N.W.2d 604, 608 (Minn. 1980). In the first two, the supreme court has directed courts to use the broad "arbitrary and capricious standard." *Id.* In the third, however, the supreme court has held that "the interpretation of an existing ordinance is a question of law for the court." *Id.* At all levels of review in this case, the material facts have been undisputed. Therefore, the issues on this review strictly concern the application of the city's ordinance, and are subject to de novo review.

**Zoning law and property rights**

As a general matter, a municipality may regulate the use of privately-owned land as part of a community-development plan. *White v. City of Elk River*, 840 N.W.2d 43, 49 (Minn. 2013). Although a municipality's authority to enact zoning ordinances is a legitimate exercise of its police power, that authority is subject to certain constitutional and statutory limitations. *Id.* (citing *Hawkins v. Talbot*, 248 Minn. 549, 551, 80 N.W.2d 863, 865 (1957)). One limitation is the municipality's authority to terminate nonconforming

uses.[2]  *Id.*  When a nonconforming use lawfully exists before an adverse zoning change takes effect, constitutional and statutory protections permit the use to continue. *Krummenacher*, 783 N.W.2d at 726.  Minn. Stat. § 462.357, subd. 1e(a) (2012) provides statutory protection for nonconforming uses:

> Except as otherwise provided by law, any nonconformity, including the lawful use or occupation of land or premises existing at the time of the adoption of an additional control under this chapter, may be continued, including through repair, replacement, restoration, maintenance, or improvement, but not including expansion. . . .

In keeping with this "grandfathering" principle, WSPZO § 4.2(1) provides that "[a]ny Structure or Use lawfully existing upon the Effective Date of this Ordinance may be continued at the size and in the manner of operation existing upon such date except as hereinafter specified."  WSPZO § 37.7(1) addresses the principle concerning signs specifically:  "A Sign that is legally established upon the effective date of this Ordinance may be continued at the size and in the manner of operation existing upon such date except as specified in this Section."  The issue in this case involves determining how and when, under the city's zoning ordinance, a nonconforming use loses its lawful status due to discontinued use or abandonment.

---

[2] In the record and caselaw, nonconforming uses and the status of the pylon sign in this case are interchangeably referred to as "lawful, nonconforming uses," "legal, nonconforming uses," and "legally established nonconforming signs."  For consistency, we will refer to "nonconforming uses" to discuss the caselaw and the pylon sign at issue.

**Discontinuance of the sign's use under WSPZO § 37.7(1)(a)(v)**

Even assuming for the sake of argument that the sign's use was discontinued or abandoned, we must determine when the sign's use was discontinued for a year. The city argues that the sign's use was discontinued when Pawn America ceased retail pawn operations in November 2012. Consequently, the city argues that the sign lost its nonconforming use status under WSPZO § 37.7(1)(a)(v) in November 2013. The city's argument relies on defining "use" in section 37.7(1)(a)(v) from the perspective of the tenant, rather than the property owner. We find the city's argument unpersuasive.

*Meaning of "use"*

The definition of "use" as it is employed in section 37.7(1)(a)(v) is unclear, both in terms of what it means to discontinue the use of a sign and whose use matters (i.e., the tenant or the property owner). To resolve this issue, we look to the zoning ordinance as a whole, the plain meaning of the provision, and caselaw analyzing similar provisions.

Section 37 regulates signs, but its definition section does not include a definition of "use" specific to the section as a whole. But WSPZO § 3.2(161) defines "Use" as: "The purpose or activity for which the land or Building thereon is designated, arranged, or intended, or for which it is occupied or maintained, and shall include any manner of performance of such activity with respect to the Performance Standards of this Ordinance." Throughout the zoning ordinance, including section 37, ordinance-defined terms are denoted by capitalizing the first letter of the word, e.g., "Use" versus "use." WSPZO § 3.1(4) provides that "[u]nless otherwise defined in this Ordinance, meanings of words and phrases shall be used in their plain, ordinary meaning." Therefore, the definition of

7

"use" in section 37 likely turns on whether a provision utilizes the ordinance-defined "Use" or the plain, ordinary "use."

The provision governing discontinuance of the use of nonconforming signs incorporates the lowercase-"u" in "use." *See* WSPZO § 37.7(1)(a)(v) ("Whenever the *use* of a Legally Established Nonconforming Sign is discontinued . . . any future *use* . . . shall be in conformity." (emphasis added)). This is distinguishable from WSPZO § 37.7(1)(a)(ii), which also regulates nonconforming uses. That provision gives permission for changes to nonconforming uses "when there is no change in *Use* of the site." WSPZO § 37.7(1)(a)(ii) (emphasis added). Because we presume that this distinction is intentional, we decline to incorporate the section 3 definition of "Use" into WSPZO § 37.7(1)(a)(v). *In re Stadsvold*, 754 N.W.2d 323, 328-29 (Minn. 2008). Instead, we consider other sources for the definition of "use" under WSPZO § 37.7(1)(a)(v).

Because WSPZO § 3.1(4) indicates that undefined words in the ordinance have their plain and ordinary meaning, we can ascertain the meaning of "use" by looking at dictionary definitions of the term. One definition of "use" is "[t]he application or employment of something; esp., a long-continued possession and employment of a thing for the purpose for which it is adapted." *Black's Law Dictionary* 1681 (9th ed. 2009). Similarly, "use" is defined, in relevant part, as "[t]he act of using something; the application or employment of something for a purpose," and, alternatively, "[e]njoyment of property, as by occupying or employing it." *The American Heritage Dictionary of the English Language* 1907 (5th ed. 2011). These definitions align with a common-sense understanding of what it means to "use" something. Based on this plain, ordinary meaning, we conclude that tenant Pawn

8

America's change in the way it occupied the property did not support the city's conclusion that the use of the pylon sign was discontinued for more than one year. Instead, we conclude that the covering of the sign in April 2013 was the point at which the sign's use was discontinued.

### *Discontinuance of use by the tenant or property owner*

Our conclusion is further supported by consideration of whose use matters—the tenant's or the property owner's. The city's argument depends on using the tenant's behavior as the measuring point for the discontinuance of the sign's use. Although the city argues that appellant failed to rebut the abandonment presumption, the city only asserts this after relying on Pawn America's behavior triggering the discontinuance provision under WSPZO § 37.7(1)(a)(v).

The first instructive source for resolving this issue is the plain language and structure of the ordinance. The city drafted WSPZO § 37.7(1)(a)(v) in passive voice, resulting in ambiguity concerning whose use matters. *See* WSPZO § 37.7(1)(a)(v) ("Whenever the use . . . *is discontinued* . . . ."). Under section 37 generally, the ordinance does not provide direct guidance to resolve the question. It does, however, refer to property owners multiple times. WSPZO § 37.5 and § 37.7(2) are particularly instructive because they place the onus on property owners to "conform[] to the other provisions[,]" § 37.5, and repair and remove unlawful nonconforming signs, § 37.7(2). That supports the argument that appellant's use of the sign is the measuring point for discontinuance of use, rather than the tenant's use.

9

One of the plain, ordinary meanings of "use" is "[t]he act of using something; the application or employment of something for a purpose." *The American Heritage Dictionary of the English Language* 1907 (5th ed. 2011). Using this definition, common sense dictates that the active employment of the sign for the purpose of advertising a business controls. The district court implicitly adopted this interpretation of the provision despite its conclusion that *appellant* "discontinued its use of the Sign in November of 2012." The district court only arrived at that conclusion after deeming the "purpose for which the Building was used . . . 'no longer applicable' [and] no longer permitted." The reliance on the purpose for which the building was used requires analyzing Pawn America's use, rather than appellant's, because appellant never changed its use of the building during the lease term. Instead, appellant always employed the building and sign for the purpose of generating revenue, which is an acceptable way of viewing use in addition to Pawn America's usage of the property and sign.

The plain meaning and structure of the ordinance informs the determination of whose use matters, but it results in ambiguity. Reasonable people could reach different conclusions concerning the issue.

Because of this ambiguity, we consider the principles underlying zoning law and the doctrine of nonconforming uses to determine whose discontinuation of use triggers the provision. On the one hand, "[z]oning ordinances were established to control land use, and development in order to promote public health, safety, welfare, morals, and aesthetics." *Stadsvold*, 754 N.W.2d at 329 (internal quotation omitted). Here, the city has a legitimate scheme in place that involves banning pylon signs. On the other hand, the importance of

common law property rights calls for courts to construe zoning ordinances strictly against a municipality and in favor of a property owner. *Frank's Nursery Sales*, 295 N.W.2d at 608. As a result of these competing interests, courts and legislatures generally permit nonconforming uses to continue, but not expand. *Krummenacher*, 783 N.W.2d at 726. This policy favors property owners' rights and their interest in the continuation of their nonconforming uses.

By construing WSPZO § 37.7(1)(a)(v) against the city and in favor of appellant, we conclude that under the discontinuation provision, a preexisting nonconforming use can only be lost where its nonuse is attributable, at least in part, to the property owner. As the property owner, appellant is entitled to the protection of its common-law property rights. The nature of the action in any zoning case, and this one in particular, supports this conclusion.

Here, appellant's use of the sign continued at least until appellant permitted Pawn America to cover the sign in April 2013. Arguably, appellant's use of the sign, including its inclusion in materials marketing the property to prospective tenants, continued until the end of Pawn America's lease. In either case, appellant's use of the sign was not discontinued for more than a year in February 2014.

Applying the rule of law concerning zoning disputes to this case vindicates appellant's property rights, and does not diminish the city's legitimate zoning scheme. We note that local governments and private property owners can amicably discuss and carry out plans that protect the rights of property owners while furthering zoning goals of the government.

11

Appellant alternatively argues, while not conceding abandonment, that it did rebut the presumption of abandonment. We do not reach this issue because we conclude that appellant never legally abandoned the sign.

## D E C I S I O N

In sum, the district court erred in concluding that appellant's legal nonconforming use had been discontinued for more than a year. The sign was not covered until April 2013. The city zoning administrator incorrectly sent appellant a letter alleging the use had been discontinued for a year in February 2014. The zoning administrator's determination was faulty, and that contributed to the district court's decision. Even if the sign's use was discontinued, we conclude that it was discontinued, at most, for ten months. Appellant is entitled to continue the nonconforming use.

**Reversed.**

12