**Gary KVITEK, Appellant,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Respondent.**

No. CX–88–2369.

Court of Appeals of Minnesota.

April 18, 1989.

Review Denied June 21, 1989.

Paul James Phelps, Thomas J. Lyons & Associates, St. Paul, for appellant.

James A. Stein, Hessian, McKasy & Soderberg, St. Paul, for respondent.

Heard, considered, and decided by HUSPENI, P.J., and CRIPPEN and IRVINE *, JJ.

## OPINION

HUSPENI, Judge.

Gary Kvitek appeals from the summary judgment in which the trial court found that his failure to maintain no-fault insurance on his pickup truck pursuant to Minn. Stat. § 65B.48, subd. 1 (1980) prohibited him from recovering no-fault economic loss benefits under Minn.Stat. § 65B.64, subd. 1 (1980). We reverse and remand.

## FACTS

In May 1980, appellant Gary Kvitek was injured while riding as a passenger in an uninsured automobile. The driver, who did not own the car, was insured. Appellant and the driver later entered into a *Pierringer* release, under the terms of which Kvitek received $85,000.

At the time of the accident, appellant owned an uninsured 1977 Chevrolet pickup truck. Prior to the accident, his driver's license had been revoked and his truck insurance was canceled. At his deposition, appellant testified that before the accident, as a result of the revocation of his license and the cancellation of his insurance, he gave the truck to his father, Norman Kvitek, to sell. Norman Kvitek had on occasion sold motor vehicles from the parking lot of his sporting goods store. Appellant also testified that he gave his keys to his father and that he had nothing to do with the sale of the truck.

Norman Kvitek testified at his deposition that the truck was placed on his parking lot with a "for sale" sign in the window, that no one was ever allowed to test drive motor vehicles he sold from the lot because of insurance considerations, and that no one would have been allowed to test drive the truck.

After the accident, appellant applied to the Minnesota Automobile Assigned Claims Bureau for no-fault benefits. The Bureau assigned his claim to respondent State Farm Mutual Automobile Insurance Company which denied the claim pursuant to Minn.Stat. § 65B.64, subd. 3 (1980).

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

Appellant subsequently commenced an action against State Farm for no-fault benefits. When both parties moved for summary judgment, that relief was granted to State Farm. Appellant argues on appeal that the trial court erred in its decision concerning the issue of contemplated use.

## ISSUE

Did the trial court err in granting summary judgment in favor of respondent?

## ANALYSIS

■ Summary judgment will be affirmed on appeal if there is no genuine issue of material fact, and the trial court did not err in its application of the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979); Minn.R.Civ.P. 56.03. If there is any doubt as to the existence of a genuine issue of material fact, the doubt must be resolved in favor of finding that a fact issue exists. *Rathbun v. W.T. Grant Co.*, 300 Minn. 223, 230, 219 N.W.2d 641, 646 (1974). We conclude that a fact issue does exist in this case and therefore reverse and remand for trial on the merits.

Appellant argues that he is an uninsured person injured in an automobile accident and, therefore, is eligible for basic economic loss benefits through the Minnesota Automobile Assigned Claims Bureau. Minn.Stat. § 65B.64, subd. 1 (1980). However, a person is not eligible for such benefits if that person owned an uninsured private passenger motor vehicle that was required to be insured under the provisions of Chapter 65B. *See* Minn.Stat. § 65B.64, subd. 3 (1980).

Minn.Stat. § 65B.48, subd. 1 (1980) sets forth the circumstances under which an automobile owner must maintain no-fault insurance on his or her vehicle:

> Every owner of a motor vehicle of a type which is required to be registered or licensed or is principally garaged in this state *shall maintain during the period in which operation or use is contemplated* a plan of reparation security under provisions approved by the commissioner, insuring against loss resulting from liability imposed by law for injury

and property damage sustained by any person arising out of the ownership, maintenance, operation or use of the vehicle.

(Emphasis added.) Therefore, if appellant contemplated use of the truck, he was required to keep it insured and would be ineligible for the economic loss benefits he seeks under section 65B.64, subd. 1.

■ The parties dispute whether use of appellant's truck was contemplated. The question of whether an owner contemplates use of his or her vehicle is a question of fact. *See LaBrosse v. Aetna Casualty & Surety, Co.*, 383 N.W.2d 736 (Minn.Ct.App. 1986). Contemplated use is determined by objective facts. *Id.* at 738.

Appellant contends that both his subjective intent and his actions demonstrate he did not contemplate use of his truck at the time of the accident. He testified that he turned over his keys to his father and gave his father permission to sell the truck. He also testified that he did not drive the truck after his insurance was revoked. Norman Kvitek testified that no potential purchasers were or would have been allowed to drive the truck. Norman Kvitek testified that the truck remained on his lot once he marked it "for sale."

In contrast, respondent argues that because the truck was fully operational, had a current license, and was for sale, use was contemplated. Respondent also points to the possibility of potential purchasers requesting to test drive the truck as indicative that use was contemplated.

The trial court found no genuine issue of fact, relying in part on *LaBrosse*. That reliance was misplaced. In *LaBrosse*, the vehicle was driven without insurance for approximately nine months. On an extremely cold day, LaBrosse could not start the vehicle, and left it on the street in front of his house. *Id.* at 737. Four days later, with the car still inoperable, LaBrosse was injured while riding as a passenger in another driver's uninsured car. *Id.* His claim for basic economic loss benefits was denied by the insurer on the ground that he did not have the required insurance on his

car and, pursuant to section 65B.64, subd. 3, was disqualified from receiving benefits. *Id.*

This court affirmed summary judgment in favor of the insurer, noting that LaBrosse never manifested an intent to insure the car. *Id.* at 738. Rather, he drove the uninsured car on a regular basis and only refrained from driving the car when it would not start. *Id.* The court also noted that although the car may not have been available for actual use, LaBrosse's actions before the accident did not indicate that he would not drive the car after it was repaired. Finally, the car remained on public property where it could cause injury or be damaged. *Id.*

The facts of this case are distinguishable from those in *LaBrosse*. Unlike *LaBrosse*, there is no evidence here that appellant drove his truck without insurance. Prior to the accident, appellant placed the truck on private property and left it there. The fact issue of whether appellant contemplated further use of his truck must be decided at trial.

### DECISION

Because there is an issue of fact concerning whether use of appellant's truck was contemplated, the trial court erred in granting summary judgment in favor of respondent.

Reversed and remanded.