# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A15-1267

Paek Saengkeo,
Respondent,

vs.

Minnesota Automobile Assigned Claims,
Appellant.

**Filed April 4, 2016**
**Reversed**
**Stauber, Judge**
**Bjorkman, Judge, dissenting**

Olmsted County District Court
File No. 55CV144128

Raymond L. Hansen, O'Brien & Wolf, L.L.P., Rochester, Minnesota (for respondent)

Timothy J. Eiden, Nicole R. Wells, Eiden & Hatfield, L.L.C., Lake Elmo, Minnesota (for appellant)

Considered and decided by Connolly, Presiding Judge; Stauber, Judge; and Bjorkman, Judge.

## S Y L L A B U S

Under Minn. Stat. § 65B.64, subd. 3 (2014), the assigned claims plan, an injured passenger of an uninsured vehicle is not entitled to economic loss benefits if the injured passenger is dwelling with a family member who is an uninsured owner of a vehicle that must be insured under Minn. Stat. § 65B.48 (2014), unless there is clear and convincing evidence that the owner did not contemplate the use or operation of his or her uninsured vehicle by anyone.

**O P I N I O N**

**STAUBER**, Judge

On appeal from summary judgment in favor of respondent-injured passenger, appellant-insurer argues that the district court erred by finding respondent eligible for economic loss benefits under the Minnesota Automobile Assigned Claims Plan (assigned claims plan) because respondent's brother, with whom respondent resided, failed to maintain insurance on a vehicle that he co-owned with his former girlfriend. We reverse.

**FACTS**

On August 15, 2010, respondent Paek Saengkeo was injured while he was a passenger in an uninsured vehicle owned and operated by a third party. At the time of the single-car accident, respondent was living with his brother and three friends, and he did not own a vehicle or have a driver's license.

Because there was no insurance policy in effect under which no-fault benefits could be paid, respondent applied for coverage through appellant Minnesota Automobile Assigned Claims Bureau (MAACB). MAACB then transferred respondent's claim under the assigned-claims plan to appellant American Family Insurance. Appellant denied respondent's coverage request under Minn. Stat. § 65B.64, subd. 3, because respondent's brother (brother) resided in the same household as respondent and was an uninsured co-owner of a motor vehicle, a 2002 Ford Explorer. Respondent subsequently filed this action in district court seeking declaratory relief. The complaint alleged that respondent qualified for coverage under the assigned-claims plan because although brother "held legal title to a

2

motor vehicle along with his former girlfriend [girlfriend] at the time of the . . . accident, . . . [girlfriend] was in fact the sole owner of the uninsured vehicle."

The parties brought cross motions for summary judgment on stipulated facts. The parties agreed that brother was involved in a relationship with girlfriend from 2005 to 2009. In 2008, brother and girlfriend co-signed a loan for the purchase of the Ford Explorer. Although brother was listed as the co-owner on the vehicle's title, the intent was for girlfriend to own the vehicle; she made the down payment of $2,000 as well as the monthly loan and insurance payments without assistance. Brother drove the vehicle only a few times with girlfriend's permission.

Brother and girlfriend ended their relationship in August 2009. Shortly thereafter, respondent moved in with brother and communication between brother and girlfriend ceased. Girlfriend maintained possession of the Ford Explorer, and brother had no access to the vehicle. On the date of the accident, girlfriend alone insured the vehicle through American Family Insurance.

The district court granted respondent's motion for summary judgment and declaratory relief. The district court found that under Minn. Stat. § 65B.64, subd. 3, the "issue before the court is whether [brother] 'contemplated' use of his former girlfriend's vehicle at the time of the accident." The district court determined that because brother "did not contemplate use of [girlfriend's] vehicle at the time of the accident," he "was not required to insure the vehicle within the purview of the Minnesota No-Fault Automobile Insurance Act." Thus, the district court concluded that respondent was qualified "to receive economic benefits under the assigned claims plan." This appeal followed.

3

**ISSUE**

Did the district court err by granting summary judgment to respondent on the basis that respondent is qualified to receive economic benefits under the assigned claims plan because respondent's brother was not required to insure his vehicle since he did not contemplate the use or operation of the vehicle?

**ANALYSIS**

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . either party is entitled to judgment as a matter of law." Minn. R. Civ. P. 56.03. We review the district court's summary judgment decision de novo to determine whether there are genuine issues of material fact and whether the district court erred in its application of the law. *Ruiz v. 1st Fid. Loan Servicing, LLC*, 829 N.W.2d 53, 56 (Minn. 2013). A de novo standard of review also applies to a district court's interpretation of a statute. *Premier Bank v. Becker Dev., LLC*, 785 N.W.2d 753, 758 (Minn. 2010).

The No–Fault Act requires that every Minnesota automobile owner maintain a "plan of reparation security," with specific, statutorily set minimum benefits, including liability coverage. Minn. Stat. § 65B.48, subd. 1; *see also* Minn. Stat. § 65B.49, subd. 3(1) (2014) (setting forth the minimum coverage required). But when the No-Fault Act was passed, it became apparent that some injured persons would not be covered because of age or lack of car ownership. *Mohs v. Parrish's Bar*, 418 N.W.2d 494, 496 (Minn. 1988). As a result, the legislature created the assigned claims plan as a "gap closing" device that was "designed to provide these individuals basic economic loss benefits." *Id.*

4

"The purpose of these gap closing provisions is to provide innocent non-insureds with at least some protection" under the No-Fault Act. *Id.*

The assigned claims plan provides that, as long as specific criteria are satisfied, certain individuals have the right to basic economic loss benefits even though there is no identified insurance policy that provides for coverage. Minn. Stat. § 65B.64, subd. 1 (2014). But Minnesota law disqualifies any vehicle owner who fails to insure the vehicle from participating in the assigned claims plan. *See* Minn. Stat. § 65B.64, subd. 3. Minnesota law also disqualifies from the assigned claims plan "[p]ersons, whether or not related by blood or marriage, who dwell and function together with the owner [of an uninsured vehicle] as a family." *Id.* These provisions do not apply if the owner of the uninsured vehicle demonstrates by clear and convincing evidence "to have [not] contemplated the operation or use of the vehicle." *Id.*

The No-Fault Act defines the owner of a vehicle as "a person, other than a lienholder or secured party, *who owns or holds legal title* to a motor vehicle or is entitled to the use and possession of a motor vehicle subjected to a security interest held by another person." Minn. Stat. § 65B.43, subd. 4 (2014) (emphasis added). It is undisputed that respondent lived with his brother, a family member, and that brother is a title-holder of the Ford Explorer. Thus, brother is an owner of the vehicle for purposes of the No-Fault Act. But the district court concluded that respondent is "eligible to receive benefits under the assigned claims plan" because brother did not contemplate using the Ford Explorer he co-owned with his ex-girlfriend and, therefore, he "was not required to insure the vehicle" under the No-Fault Act.

5

Appellant argues that the "district court erred in its analysis that the issue before the court was whether . . . brother contemplated use of the vehicle he unquestionably co-owned." Instead, appellant claims that when Minn. Stat. § 65B.64, subd. 3, is read in conjunction with Minn. Stat. § 65B.48, subd. 1, the issue is "whether *any* owner contemplated the use of the motor vehicle at the time of the accident."

The issue presented by appellant is one of statutory construction. The object of statutory interpretation is to ascertain and effectuate the intention of the legislative body. Minn. Stat. § 645.16 (2014). In doing so, we first determine whether the statute's language, on its face, is ambiguous. *Am. Tower, L.P. v. City of Grant*, 636 N.W.2d 309, 312 (Minn. 2001). A statute is ambiguous if it is subject to more than one reasonable interpretation. *Amaral v. The Saint Cloud Hosp.*, 598 N.W.2d 379, 384 (Minn. 1999). Words and phrases are construed according to their plain and ordinary meanings. *Frank's Nursery Sales, Inc. v. City of Roseville*, 295 N.W.2d 604, 608 (Minn. 1980); *see also* Minn. Stat. § 645.08(1) (2014) (providing that words and phrases are construed according to their common usage). When the legislature's intent is clearly discernible from a statute's plain and unambiguous language, we interpret the language according to its plain meaning without resorting to other principles of statutory construction. *City of Brainerd v. Brainerd Invs. P'ship*, 827 N.W.2d 752, 755 (Minn. 2013).

Minn. Stat. § 65B.64 (2014) is entitled: "Persons Entitled To Participate In Assignment Claims Plan." Subdivision three of that section contains the "Disqualification" language. Minn. Stat. § 65B.64, subd. 3. The relevant language provides: "For purposes of determining whether security is required under section

6

65B.48, an owner of any vehicle is deemed to have contemplated the operation or use of the vehicle at all times unless the owner demonstrates to the contrary by clear and convincing evidence." *Id.* Under the plain language of this subdivision, the owner of a vehicle may rebut the presumption that the owner is required to maintain insurance on the vehicle by showing that use of the vehicle was not contemplated. The question before us is whether that presumption is rebutted if the owner demonstrates that (1) the owner did not contemplate using the vehicle or (2) the owner did not contemplate use of the vehicle by anyone.

Respondent argues that three cases interpreting Minn. Stat. § 65B.64, subd. 3, support his position that he is entitled to coverage under the assigned claims plan because the statute merely requires him to show that *brother* did not contemplate using the vehicle. In the first case, *LaBrosse v. Aetna Casualty & Sur. Co.*, 383 N.W.2d 736, 737 (Minn. App. 1986), the plaintiff purchased a vehicle and then drove it for several months without insurance. After the plaintiff could not start his vehicle one cold day, he left the vehicle on the street in front of his house. *Id.* Four days later, while the vehicle was still inoperable, the plaintiff was injured while riding in another's uninsured vehicle. *Id.* On appeal, this court concluded that the plaintiff was not entitled to economic benefits under the assigned claims plan. The court reasoned that "[a]lthough [the plaintiff's] car was no longer available for actual use, there is no indication in his activities before the accident that he was not considering future use of the vehicle if and when it could be repaired." *Id.* at 738.

7

In the second case, *Kvitek v. State Farm Mut. Auto Ins. Co.*, the plaintiff was injured while a passenger in another's uninsured automobile. 438 N.W.2d 425, 426 (Minn. App. 1989), *review denied* (Minn. June 21, 1989). At the time of the accident, the plaintiff owned an uninsured vehicle because his insurance was canceled after his driver's license had been revoked. *Id.* The plaintiff claimed that as a result of his license revocation and insurance cancelation, he gave the vehicle to his father to sell. *Id.* The plaintiff's father testified that the vehicle was then parked in a parking lot with a "for sale" sign and that "no one would have been allowed to test drive" the vehicle "because of insurance considerations." *Id.* On appeal from the denial of benefits under the assigned claims plan, this court reversed and remanded because there was a "fact issue of whether [the plaintiff] contemplated further use of the [vehicle]." *Id.* at 428.

Finally, in *Harris v. Am. Family Mut. Ins. Co.*, 480 N.W.2d 690, 691 (Minn. App. 1992), *review denied* (Minn. Mar. 26, 1992), the plaintiff's vehicle began having mechanical problems shortly after she purchased it. Because she decided that she could no longer use the vehicle, the plaintiff parked the vehicle in her apartment garage until she could repair it, allowing the insurance to lapse. *Id.* The plaintiff was subsequently injured in an automobile accident while driving an uninsured vehicle owned by her fiancé. *Id.* at 690-91. On appeal from the denial of coverage under the assigned claims plan, this court reasoned that the insurer's position that plaintiff was not entitled to benefits "presumes mere ownership of vehicle, without the owner contemplating the vehicle's operation or use, is sufficient to require insurance to be purchased." *Id.* at 692. The court then concluded that because there was no evidence that the plaintiff

8

contemplated the vehicle's operation or use while it was unrepaired and in storage, she was entitled to coverage under the assigned claims plan. *Id.*

Although *LaBrosse*, *Kvitek*, and *Harris*, all iterate that insurance is not required if an owner of a vehicle does not contemplate the vehicle's use, the language used in those cases fails to differentiate between whether insurance is required (1) only if the owner contemplated using the vehicle or (2) if the owner contemplated the vehicle's use by others. For example, in reversing and remanding, this court in *Kvitek* stated that there was a fact issue as to "whether [the plaintiff] contemplated further use of his [vehicle]." 438 N.W.2d at 428. But in the very next sentence, this court phrased the issue on remand as "whether use of [the plaintiff's vehicle] was contemplated." *Id.* And in *Harris*, this court concluded that "the time during which a vehicle is intentionally put in storage, and not some future time when the vehicle may be repaired, is the relevant time period for determining *if the vehicle's use or operation is contemplated*." 480 N.W.2d at 692 (emphasis added). But the court went on to state that there was "no evidence that, while [the plaintiff's vehicle] was in storage and unrepaired, [the plaintiff] *contemplated its operation or use*." *Id.* (emphasis added). Consequently, the cases cited by respondent do not definitively resolve the issue, and no other binding authority construes the relevant statutory language.

Nonetheless, we conclude that the issue is resolved by the plain language of the assigned claims plan. In setting forth the basis for disqualification of coverage under the assigned claims plan, section 65B.64, subdivision 3 specifically references section 65B.48, and premises the disqualification of economic loss benefits on the failure to

9

insure as "required" by that statute.[1]  *See* Minn. Stat. § 65B.64, subd. 3 (stating that "[f]or purposes of determining whether security is required under section 65B.48").  Moreover, *LaBrosse*, *Kvitek*, and *Harris* each refer to Minn. Stat. § 65B.48, subd. 1, to determine if the plaintiffs were disqualified from benefits under the assigned claims plan due to their failures to maintain insurance.[2]  Thus, a determination of whether respondent is entitled to benefits under the assigned claims plan ultimately rests on whether his brother was required to insure his vehicle as set forth in Minn. Stat. § 65B.48, subd. 1.

Minn. Stat. § 65B.48, subd. 1 provides in relevant part:

> Every owner of a motor vehicle of a type which is required to be registered or licensed or is principally garaged in this state shall maintain during the period in which operation or use is contemplated a plan of reparation security under provisions approved by the commissioner, insuring against loss resulting from liability imposed by law for injury and property damage sustained by any person arising out of the ownership, maintenance, operation or use of the vehicle.

---

[1] At the time *Harris* was decided, Minn. Stat. § 65B.64, subd. 3 (1986) stated:
> A person shall not be entitled to basic economic loss benefits through the assigned claims plan with respect to injury which was sustained if at the time of such injury the injured person was the owner of a private passenger motor vehicle for which security is required under section 65B.41 to 65B.71 and that person failed to have such security in effect.  Members of the owner's household other than minor children shall also be disqualified from benefits through the assigned claims plan.

The paragraph discussing whether the owner of a vehicle contemplated the vehicle's use or operation was not added to section 65B.64, subdivision 3 by the legislature until 1990. *See* 1990 Minn. Laws ch. 456, § 2, at 457.

[2] The relevant language in the current version of section 65B.48, subdivision 1 remains unchanged from the versions in effect at the time *LaBrosse*, *Kvitek*, and *Harris* were decided.  *Compare* Minn. Stat. § 65B.48, subd. 1 (2014) *with* Minn. Stat. § 65B.48, subd. 1 (1986).

The plain language of section 65B.48, subdivision 1 states that an owner of a vehicle is required to maintain insurance "during the period in which operation or use [of the vehicle] is contemplated." *Id.* This language is clear. It does not state that an owner is required to maintain insurance if the owner "contemplates his or her use or operation of the vehicle." Rather, the statute requires the owner of a vehicle to maintain insurance on the vehicle if the owner contemplates that *anyone* will use or operate the vehicle. *See id.* Although we acknowledge that the purpose of the assigned claims plan may be to provide coverage to respondent, the plain language of section 65B.48, subdivision 1 indicates that the unique facts of this case prevent respondent from being entitled to coverage. And it is well settled that this court will not re-write an unambiguous statute to conform to what may be the legislature's intent. *See, e.g., Frederick Farm, Inc. v. Cty. of Olmsted*, 801 N.W.2d 167, 172 (Minn. 2011) (stating that an appellate court cannot "add words to a statute 'that are purposely omitted or inadvertently overlooked' by the Legislature" (quoting *Premier Bank v. Becker Dev., LLC*, 785 N.W.2d 753, 760 (Minn. 2010)). Accordingly, we conclude that under the plain language of Minn. Stat. § 65B.48, subd. 1, respondent's brother, as a vehicle owner, was required to maintain insurance on the Ford Explorer as long as use of the vehicle was contemplated by anyone.

The record reflects that use of the Ford Explorer was contemplated at the time of the accident; girlfriend was using the Explorer, and the last time brother communicated with girlfriend, he knew that she was using the vehicle. If brother had any question about the vehicle's use or whether he should maintain insurance on the vehicle, he could have removed his name from the title to ensure that he was not a legal owner of the Ford

11

Explorer. He did not. Because he remained an owner of the vehicle, and use of the vehicle was contemplated at the time of the accident, brother was required to maintain insurance on the Explorer under section 65B.48, subdivision 1. The district court erred by concluding that respondent was not disqualified from benefits under the assigned claims plan because respondent's brother failed to insure the vehicle he owned.

## DECISION

A person is not entitled to economic benefits under the assigned-claims plan if the person is dwelling with a family member who is an owner of an uninsured vehicle unless the owner demonstrates that the owner was not required to maintain insurance on the vehicle because use of the vehicle was not contemplated by anyone. Because respondent was living with his brother, who was the co-owner of a vehicle that he did not insure, and brother's former girlfriend was using the vehicle, respondent is not entitled to economic loss benefits under the assigned claims plan. Accordingly, the district court erred by denying appellant's motion for summary judgment and granting respondent's motion for summary judgment and declaratory relief.

**Reversed.**

**BJORKMAN**, Judge (dissenting)

I respectfully dissent. Because the undisputed record demonstrates that brother did not contemplate using the 2002 Ford Explorer at the time of respondent's accident, I conclude that respondent is not disqualified from receiving economic-loss benefits under the assigned claims plan and would affirm.

The facts relevant to brother's ownership and contemplated use of the Explorer are undisputed. At the time of respondent's accident, brother held title to the Explorer, but had not used or even had access to it for over a year. During that time, girlfriend had exclusive use of the Explorer and obtained insurance for it, identifying herself as the sole named insured. The parties agree that this is the relevant time period for purposes of determining brother's obligation to obtain insurance for the Explorer. On this record, evidence that brother did not contemplate using the Explorer during the relevant time period is not just clear and convincing, it is undisputed and conclusive.

Appellant, in essence, argues these facts are not determinative because Minn. Stat. § 65B.48, subd. 1 (2014) requires a vehicle owner to obtain insurance if the owner contemplates anyone using the vehicle. This argument is at odds with the plain language of Minn. Stat. § 65B.64, subd. 3 (2014) as well as our caselaw interpreting Minn. Stat. § 65B.48 (2014).

Although the broad language of Minn. Stat. § 65B.48, subd. 1, and the definition of "owner" in Minn. Stat. § 65B.43, subd. 4 (2014), provide generally that every title holder must obtain insurance for a vehicle when any use is contemplated, the more specific language of Minn. Stat. § 65B.64, subd. 3, the provision under which appellant would deny

coverage, must guide our analysis. In enacting Minn. Stat. § 65B.64, subd. 3,[3] the legislature created a specific standard and framework for determining the insurance obligations of a vehicle owner in the context of disqualification from receiving benefits under the assigned claims plan. This standard focuses on whether "an owner" contemplates use of the vehicle rather than whether "every owner" contemplates such use as the broader statute, Minn. Stat. § 65B.48, subd. 1, provides. I am persuaded that this distinction makes a difference.

By using the term "an owner," the legislature recognized that in situations involving co-owners, it is possible that each owner may have his own contemplation as to the vehicle's usage. This case exemplifies this situation. Brother was "an owner" of the Explorer during the relevant time period, but he demonstrated by undisputed evidence that he did not contemplate using the vehicle during that time. Girlfriend was also "an owner" during the relevant time period, and she clearly contemplated and actually used the vehicle during that time. To the extent "an owner" may be precluded from receiving benefits under the assigned claims plan, girlfriend is that owner. Because the record demonstrates by clear and convincing evidence that brother did not contemplate the use of the Explorer during the relevant time period, respondent, as brother's household member, is not disqualified from participation in the assigned claims plan under Minn. Stat. § 65B.64, subd. 3.

---

[3] "For purposes of determining whether security is required under section 65B.48, an owner of any vehicle is deemed to have contemplated the operation or use of the vehicle at all times unless the owner demonstrates to the contrary by clear and convincing objective evidence." Minn. Stat. § 65B.64, subd. 3.

Even before the relevant provision of Minn. Stat. § 65B.64, subd. 3 was effective, in *Harris v. Am. Family Mut. Ins. Co.*, 480 N.W.2d 690, 692 (Minn. App. 1992), *review denied* (Minn. Mar. 26, 1992), this court rejected the argument that ownership of a vehicle, in and of itself, triggers the obligation to obtain insurance under Minn. Stat. § 65B.48, subd. 1. Harris was injured while driving an uninsured motor vehicle owned by a friend. At the time of the accident, Harris owned but was not using a vehicle that had multiple mechanical issues. Harris had parked the vehicle in a garage and let the insurance coverage lapse until such time as she was able to repair and use the vehicle. As here, American Family argued that Harris was not entitled to benefits under the assigned claims plan because she failed to insure her owned vehicle. The focus of our analysis was the legislature's intent when requiring an owner to obtain insurance during "the period in which operation or use is contemplated." *Harris*, 480 N.W.2d at 691. We concluded that the relevant time period was when Harris intentionally put her vehicle into storage, not some future time when the vehicle might be repaired and put back into use. And we held, on that record, that Harris was not obligated to insure her vehicle—and thus not ineligible for benefits under the assigned claims plan—during the relevant time period when her accident occurred.[4] Here, too, I would conclude that mere ownership, without contemplated use, is insufficient to

---

[4] This court noted that the legislature amended Minn. Stat. § 65B.64, subd. 3 in 1990 to permit vehicle owners to show they did not contemplate use of a vehicle for purposes of the disqualification provision in the assigned claims plan. *Harris*, 480 N.W.2d at 692. But we did not decide whether the amendment applied retroactively because our decision rested on Minn. Stat. § 65B.48, subd. 1. Following *Harris*, the legislature further amended Minn. Stat. § 65B.64, subd. 3 to proscribe the evidentiary standard an owner must meet to establish that use of the owned vehicle is not contemplated—clear and convincing evidence. Minn. Stat. § 65B.64, subd. 3 (1996).

trigger an obligation to obtain insurance under Minn. Stat. § 65B.48, subd. 1, the violation of which precludes participation in the assigned claims plan under Minn. Stat. § 65B.64, subd. 3.

I agree with the majority that the assigned claims plan is designed to provide innocent non-insureds with some degree of protection, *Mohs v. Parrish's Bar*, 418 N.W.2d 494, 496 (Minn. 1988). Providing benefits to respondent would serve that purpose. Respondent was not a licensed driver, did not own a vehicle (under any definition of ownership), and was an innocent passenger when he was seriously injured. He had no reason to obtain insurance. Nor as a practical matter did brother act irresponsibly by not insuring girlfriend's vehicle that he did not use and that girlfriend properly insured.

Moreover, permitting respondent to recover economic-loss benefits is consistent with the public policy expressed in the Minnesota No-Fault Act. The act is designed to "relieve the severe economic distress of uncompensated victims of automobile accidents" by requiring automobile insurers to offer and vehicle owners to purchase insurance that will cover basic economic loss. Minn. Stat. § 65B.42, subd. 1 (2014). Providing benefits to respondent under the assigned claims plan honors both goals. Respondent receives compensation for the medical expenses and other economic loss he sustained as a result of the accident. And girlfriend fulfilled the requirement that the Explorer be insured under a policy that includes economic-loss benefits. Accordingly, I would affirm.